**HEADS AND THREADS, DIVISION OF M S L INDUSTRIES, INC.**
v.
**UNITED STATES.**
**C.D. 3412; Protest 64/20586–14545.**

United States Customs Court,
Second Division.
April 17, 1968.

Barnes, Richardson & Colburn, New York City (Joseph Schwartz, New York City, of counsel), for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Morris Braverman, New York City, trial attorney), for defendant.

Before RAO, FORD, and RICHARDSON, Judges.

RICHARDSON, Judge:

The merchandise of this protest, described on the invoice as "Hexagon Socket Head Bolts," was exported from Italy and classified in liquidation as "other screws" having shanks or threads over 0.24 inch in diameter under item 646.63 of the Tariff Schedules of the United States, and assessed for duty at the rate of 19 per centum ad valorem. It is claimed by the plaintiff-importer that the merchandise is properly dutiable at the rate of 0.5 cent per pound under the provision for "Bolts" in item 646.54 of said tariff schedules.

The competing tariff provisions read as follows:

Of iron or steel:

646.54     Bolts and bolts and their nuts imported in the same shipment     0.5¢ per lb.

\*    \*    \*    \*    \*    \*

Screws:

\*    \*    \*    \*    \*    \*

Other:

\*    \*    \*    \*    \*    \*

646.63     Having shanks or threads over 0.24 inch in diameter     19% ad val.

The record before the court consists of testimonial, documentary and physical evidence. In addition, the record in Heads & Threads, Div. of MSL Industries v. United States, protest 64/20587, was incorporated into the record of this case. It appears from the evidence in the combined records that the fastening devices the subject of this case are composed of a steel alloy metal, are cylindrical in shape, are threaded on one end and capped on the other end with a hexagonal configuration cut into the capped end or head. The fastener is torqued by means of a hexagonal shaped key wrench which is inserted into the hexagonal configuration cut into the head and turned, thus causing the fastener itself to be turned and its screw thread engaged. The subject articles are used to join various metal components together either through the medium of a hole tapped in one of the components to be joined together, or with the use of a nut screwed upon the threaded shank after engagement of the components. Both methods of joining components of metal together with the fastener are depicted in the sample of a plastic ejection machine received in evidence as plaintiff's illustrative exhibit 2.

A witness in the employ of the plaintiff-importer testified that the imported articles are purchased abroad and imported as hexagon socket head bolts and are sold here as socket head capscrews, that he had purchased articles similar to those at bar in 1962 and 1963 from the Olympic Screw & Rivet Company as hexagon socket head bolts, and that when he was general manager of another fastener company prior to his present employment said company purchased articles similar to those at bar from a number of domestic manufacturers always under the name socket head capscrew and by no other name.

Five other witnesses with either current or past connections with firms in the domestic fastener industry testified to the effect that articles such as that at bar had always been sold domestically as socket head capscrews, and these witnesses identified manufacturers' sales catalogues uniformly describing such domestically produced merchandise as socket head capscrews. And in at least one piece of literature placed in evidence, namely, a 1952 military specification for an alloy steel article similar to that at bar but tapered on the head, it is noted that the article is described as a "bolt-internal wrenching."

Some of the testimony in the combined records is devoted to the subject matter of a "washer face" in connection with the articles at bar. (It seems that the presence or absence of this feature is utilized by customs officers to distinguish capscrews from bolts for tariff classification purposes.) Plaintiff's employee testified that the fasteners - at bar did not have a washer face under the head or the equivalent of a washer face, that he has very seldom heard any reference to the "equivalent" of a washer face, that he would consider "chamfered corners would be as close to a washer face as possible," and that the involved fasteners did have a bearing surface which performed the same function as the bearing surface of a hexagon head capscrew.

Four of the other witnesses testified to the effect that the fasteners in question possessed a smooth bearing surface beneath the head which performed the same function as a washer face of the hexagon head capscrew (to prevent distortions or stress concentrations when the fastener is torqued), and that this finished bearing surface is a washer type surface and is equivalent to a washer face. It should be here noted that one of these four witnesses had previously testified that the subject fastener did not have a washer type surface under the head. However, this witness reversed his testimony on this point apparently because of some self-confessed and pre-sumably ill-advised limitation of his concept of a washer face only to the characteristics of the raised boss or stepped head of the hexagon head capscrew.

In our view the instant record presents no proper occasion for us to consider and decide the issue of commercial designation in relation to the terms "socket head capscrew" and "capscrew" which has been tendered to us in the arguments of counsel. These terms have not been used in positive context in subpart D of part 3 of schedule 6 of the tariff schedules. And their use in a tariff statute is prerequisite to a judicial determination of a claim for commercial designation embracing these terms. United States v. Julius Wile Sons & Co., 22 CCPA 267, T.D. 47327.

What we are dealing with here are competing eo nomine provisions for bolts and screws, concerning which the court must, among other things, undertake to ascertain their common meanings vis-a-vis the merchandise at bar. Plaintiff has cited to us the case of Morris Supply Company v. United States, 52 Cust.Ct. 174, C.D. 2457, as authority for its contention that a capscrew in general and a socket head capscrew in particular is a bolt. And defendant has called our attention to a number of lexicographical authorities which it contends compel the conclusion that capscrews are screws within the meaning of the tariff provisions for screws.

In Morris Supply Company v. United States, supra, the merchandise, described as "Head Cap Screws", was classified under the basket provision of paragraph 397 of the 1930 Tariff Act and claimed by the importer to be properly classifiable under the eo nomine provision for bolts under paragraph 330 of that Act. The court, after reviewing the various definitions of bolts and screws and noting that the distinction between bolts and screws was somewhat beclouded, concluded that the imported article was by the preponderance of definitions a bolt although termed a capscrew. The case has little meaning for us here because,

as the court there observed, there was no competing *eo nomine* provision for screws in the 1930 Act as is the case here. Also, revision of the tariff statutes into what are now the Tariff Schedules of the United States would seem to warrant a fresh look at the definitions of the terms "bolt" and "screw" with a view toward ascertaining contemporary usage.

There appears to be no dispute here of the fact that the imported article which the witnesses have referred to as a "socket head capscrew" is a form of the article which they have also referred to as "capscrew". Taking into consideration the fact that the tariff schedules had their inception in the Tariff Classification Study of 1960, terminating for our purposes in the First Supplemental Report dated January, 1962, a consultation of definitions of the term "capscrew" of that period would seem to be *apropos* insofar as impact of the term on the tariff schedules is concerned. Funk & Wagnalls, New Desk Standard Dictionary, 1959 edition, contains the following definition of the term "capscrew":

> *capscrew*—A threaded bolt not requiring a nut.

But under the definition of the term *"screw* n. * * * 2. *Specif.* * * *"* appearing in the same authority, we find the following statement:

> Screws are named * * * (2) from the shape or character of the head; as, *cap-s.* (having a square or hexagonal head). * * *

And a pictorial illustration of a slotted, fillister head fastener designated "Cap" is set out opposite the definition of "screw" in that dictionary.

Audels, New Mechanical Dictionary, 1960 edition, contains the following definition of the term "capscrew":

> *Cap Screw.*—A screw-bolt intended to be used without a nut, so called becaused first used to secure the covers of small steam engines instead of studs. A cap screw is intended to be operated by a spanner, and therefore differs from a machine-screw, which is turned

by a screw-driver. It differs from a set-screw in that its point does not come into contact with any part to hold it. The heads are square or hexagon and generally deeper than those of a bolt of similar diameter.

> *Screw Bolt.*—In machinery and construction work, more commonly called *machine bolt*; signifying, therefore, a fastening made by means of a nut engaging with a screw thread, as distinguished from the riveted form of fastening.

> *Spanner.*—A wrench or key for turning nuts; this is a general term, being qualified according to the various descriptions in use, such as *ring spanner, T spanner, coupling spanner,* etc.

And Webster's, New International Dictionary, Third Edition (1961), contains the following definition of the term "capscrew":

> *cap screw* n: Tap bolt

> *tap bolt* n: a headed bolt used without a nut for screwing into a hole—called also *cap screw, tap screw;*

■ These definitions of the term "capscrew" place the article in the bolt family of fasteners for the most part, although one of the authorities indicates that the article also belongs 'in the screw family of fasteners. In any case, if the matter could properly rest upon the basis of definitions, we would be inclined to treat the article as a bolt for classification purposes, in line with the position taken by the majority of the contemporary lexicons. However, the common meaning of tariff terms as expressed in lexicographical authorities, while ordinarily relied upon by the courts, is not binding upon the courts, and must in any case, yield to a contrary legislative intent.

As previously noted, subpart D of part 3 of schedule 6 of the tariff schedules does not refer to the word "capscrew" in positive context. The schedule makes use of the word only in excluding articles so designated from the duty rate treatment accorded machine screws of certain dimensions. And this exclusionary use

of the term "capscrew" takes place under the heading of "screws" in the statute. This would seem to indicate a legislative intent to treat the articles designated as "capscrews" as screws. The explanatory notes to the schedule, dated November 15, 1960, state in part (page 188):

> * * * Item 646.58 conforms with the existing customs practice of classifying machine screws of the dimensions specified as "bolts" under paragraph 330. Cap screws have been uniformly classified under paragraph 397 at the rates reflected in items 646.60 and 646.63. Hexagon-head cap screws are an important item of commerce and to insure that they would fall in items 646.60 and 646.63, cap screws are specifically excepted from item 646.58. A cap screw is distinguishable from the bolts in item 646.54 by the presence of a washer face on the underside of the head of the cap screw.

And in the First Supplemental Report on the Tariff Classification Study, issued January, 1962, the following appears on page 58:

> Item 646.58—*machine screws, not including cap screws*: A statement filed with the Ways and Means Committee objects to the exclusion of cap screws from this item inasmuch as it results in such screws becoming dutiable at the higher rates provided in items 646.60 and 646.63. The proposed provisions conform to the existing customs practice which is to assess the higher rates involved on cap screws (which are distinguished by customs officers from bolts and from other machine screws by the presence of a washer face or its equivalent on the underside of the head of the screw). It is understood that the importers have asked the Bureau of Customs to review this practice.

The foregoing references leave little to the imagination and no room for doubt as to the intentions of the framers of the tariff schedules to treat capscrews in varying forms as screws and not as bolts. And since the items under the subject schedule were enacted into law as proposed by the framers, it reflects legislative approval of administrative practice. And under the circumstances we are bound thereby whether or not we would agree with this classification practice were we free to consider classification in the light of contemporary definitions. It follows, therefore, that inasmuch as the classification protested is consistent with the legislative intent to classify capscrews as screws and not as bolts, the protest herein must be overruled.

Judgment. will be entered accordingly.

FORD, C. J., and RAO, J., concur.