56 CCPA

HEADS AND THREADS, DIV. OF MSL INDUSTRIES, INC., Appellant,

v.

The UNITED STATES, Appellee.

Customs Appeal No. 5323.

United States Court of Customs and Patent Appeals.

May 15, 1969.

Barnes, Richardson & Colburn, New York City, attorneys of record, for appellant. Joseph Schwartz and Earl R. Lidstrom, Chicago, Ill., of counsel.

William D. Ruckelshaus, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Morris Braverman, New York City, for the United States.

Eugene L. Stewart, Washington, D. C., amicus curiae.

Before RICH, Acting Chief Judge, NEESE, Judge, sitting by designation, and ALMOND and BALDWIN, Judges.

ALMOND, Judge.

Heads and Threads, Div. of MSL Industries, Inc. appeals from the judgment of the United States Customs Court, Second Division,[1] overruling its protest against the classification of the imported merchandise, described on the invoice as "Hexagon Socket Head Bolts Less Nuts," as "other screws" having shanks or threads over 0.24 inch in diameter under item 646.63 of the Tariff Schedules of the United States, and assessed with duty at the rate of 19 per centum ad valorem.

It is undisputed that the merchandise involved consists of fastening devices composed of a steel alloy metal, cylindrical in shape, threaded on one end and capped on the other end with a hexagonal configuration cut into the capped end or head. The fastener is torqued by means of a hexagonal-shaped key wrench which is inserted into the hexagonal configuration cut into the head and turned. The subject articles, used to join various metal components together either through the medium of a hole tapped in one of the components to be joined together or with the use of a nut screwed upon the threaded shank after engagement of the components, are admittedly generally known in the trade and commerce of the United States as "socket head cap screws."

Appellant, while not disputing that the articles in question have shanks or threads over 0.24 inch in diameter, contends that they are "bolts" within the common meaning, and within the meaning and intent of the Tariff Schedules of the United States, and therefore dutiable

---

1. Heads and Threads, Div. of MSL Industries, Inc. v. United States, 60 Cust.Ct. 430, 285 F. Supp. 173, C.D. 3412.

under item 646.54 of said schedules as "bolts" at 0.5 cents per lb.

The pertinent tariff provisions read as follows:

Schedule 6, Part 3, Subpart D:

Bolts, nuts, studs and studding, screws, and washers (including bolts and their nuts imported in the same shipment, and assembled bolts or screws and washers, with or without nuts); screw eyes, screw hooks and screw rings; turnbuckles, all the foregoing not described in the foregoing provisions of this subpart, of base metal:

Of iron or steel:

| | | |
|---|---|---|
| 646.54 | Bolts and bolts and their nuts imported in the same shipment | 0.5¢ per lb. |
| 646.56 | Nuts | 0.3¢ per lb. |
| 646.57 | Studs and studding | 14.5% ad val. |
| 646.58 | Screws: | |
| | Machine screws 0.375 inch or more in length and 0.125 inch or more in diameter (not including cap screws) | 0.5¢ per lb. |
| | Other: | |
| 646.60 | Having shanks or threads not over 0.24 inch in diameter | 22.5% ad val. |
| 646.63 | Having shanks or threads over 0.24 inch in diameter | 19% ad val. |

---

The complete record herein, constituting an incorporated record[2] as well as the record in the case at bar, consists of the testimony of one witness for appellant, five witnesses for the United States as well as various exhibits.

Appellant's witness, Robert Dwyer, testified that he was associated with the importer herein and that he had been involved in all phases of the screw, nut and bolt industry for approximately ten years. He identified appellant's exhibit 1 as samples of the merchandise involved and stated that they are sold here as socket head cap screws, and that prior to his present employment, when he was in his own business, he did not recall using any words other than socket head cap screws in a purchase order.

Five United States' witnesses with extensive experience in the domestic fastener industry testified to the effect that articles such as those in question had always been sold domestically as socket head cap screws and so referred to in manufacturers' sales catalogs identified by the witnesses.

Considerable testimony in the record is devoted to the question of whether the articles involved possess a "washer face or its equivalent" since, apparently, the presence or absence of this feature is utilized by customs officers to distinguish cap screws from bolts. Mr. Dwyer testified that a washer face is "an embossed circle underneath the head of the bolt which would be approximately ¹⁄₆₄th inch in thickness" and that the articles

2. Heads and Threads Div. of MSL Industries v. United States, Protest No. 64/20587, abandoned by the plaintiff and dismissed, incorporated upon stipulation that the merchandise and issues in both cases are similar in all material respects.

in question did not have a washer face or its equivalent. The witness then identified appellant's exhibit 4, which he said did have a washer face, as a hexagon head cap screw. While he seldom heard any reference to the term "equivalent" of a washer face, he said he would consider that chamfered corners are as close to a washer face as possible and that such are not present on the bearing surface, the surface underneath the head, of the socket head cap screws represented by exhibit 1. The witness further stated that the socket head cap screws have a bearing surface which performs the same function as the bearing surface of the hexagon head cap screw.

Appellee's witnesses testified to the effect that the socket head cap screws in question possessed a smooth bearing surface beneath the head which performed the same function as a washer face of the hexagon head cap screw, namely to keep the edge of the head from gouging the work, and that this finished bearing surface is a washer type surface and is equivalent to a washer face. Two witnesses stated in effect that an embossed or raised surface, while a necessity in a hexagon head cap screw to prevent scratching by the points on the head, was not required in a socket head cap screw due to the fact that the head is round and without points, hence there is no possibility of marring an abutting surface.

In holding that the instant importation was properly classified under item 646.60, the Customs Court observed that the articles in question were a form of article referred to as "cap screw" and that the majority of contemporary lexicons define the term "cap screw" so as to place it in the bolt family of fasteners. However, the court noted, properly we believe, that the common meaning of tariff terms as expressed in lexicographical authorities must yield to contrary legislative intent. It then proceeded to find that:

&ast; &ast; &ast; subpart D of part 3 of schedule 6 of the tariff schedules does

not refer to the word "capscrew" in positive context. The schedule makes use of the word only in excluding articles so designated from the duty rate treatment accorded machine screws of certain dimensions. And this exclusionary use of the term "capscrew" takes place under the heading of "screws" in the statute. This would seem to indicate a legislative intent to treat the articles designated as "capscrews" as screws.

The court then held that the following references leave "little to the imagination and no room for doubt as to the intentions of the framers of the tariff schedules to treat capscrews in varying forms as screws and not as bolts":

The Explanatory Note to the Tariff Schedules dated November 15, 1960, stating, in pertinent part:

Item 646.58 conforms with the existing customs practice of classifying machine screws of the dimensions specified as "bolts" under paragraph 330. Cap screws have been uniformly classified under paragraph 397 at the rates reflected in items 646.60 and 646.63. Hexagon-head cap screws are an important item of commerce and to insure that they would fall in items 646.60 and 646.63, cap screws are specifically excepted from item 646.58. A cap screw is distinguishable from the bolts in item 646.54 by the presence of a washer face on the underside of the head of the cap screw.

The First Supplemental Report on the Tariff Classification Study, issued in January 1962, stating:

Item 646.58—*machine screws, not including cap screws*: A statement filed with the Ways and Means Committee objects to the exclusion of cap screws from this item inasmuch as it results in such screws becoming dutiable at the higher rates provided in items 646.60 and 646.63. The proposed provisions conform to the existing customs practice which is to assess the higher rates involved on

cap screws (which are distinguished by customs officers from bolts and from other machine screws by the presence of a washer face or its equivalent on the underside of the head of the screw). It is understood that the importers have asked the Bureau of Customs to review this practice.

While appellant contends that the imported articles are "bolts" within the common meaning of that term and that appellee has failed to establish a different "commercial designation" for the term "bolts," or that the imported articles are excluded from that term, it recognizes that a clear congressional intent to treat cap screws as screws and not bolts will be controlling. We turn then to appellant's main point, namely that the imported socket head cap screws do not have "a washer face or its equivalent," and therefore are "bolts" within the congressional intent and meaning of that term.

The gist of appellant's argument in this regard is that while the Tariff Commission changed its earlier report by the statement that the distinguishing feature of cap screws is the presence of a washer face *or its equivalent,* it did not completely concur in the domestic industry's urging of a distinction based on the presence of a washer face or its equivalent *finish.* The only equivalent, it is urged, would be structural such as a chamfer.

We do not consider the absence of the word "finish" to be as significant as urged. In its original report, the Tariff Commission was obviously concerned with hexagon head cap screws. The supplemental report fails to specifically refer to hexagon head cap screws while adding a proviso for cap screws which possess the equivalent of a washer face. The weight of testimony reveals that hexagon head cap screws require either a raised boss washer face or the equivalent in chamfered corners to prevent marring of mating surfaces. However, socket head cap screws do not have external corners or edges to mar surfaces, therefore require neither a raised boss nor chamfering. The smooth bearing surface beneath the screw head performs the same function. A review of the substantial evidence of record convinces us that the merchandise in question is a cap screw possessing the equivalent of a washer face within the meaning of the language employed by the Tariff Commission.

■ The tariff history makes it clear that the intent of the framers, enacted into law as proposed, was to treat cap screws as screws. The classification protested is consistent with that legislative intent.

The judgment, therefore, is affirmed.

Affirmed.