(C.D. 4031)

W. N. PROCTOR COMPANY v. UNITED STATES

United States Customs Court, Second Division

(Decided June 5, 1970)

*Walter E. Doherty, Jr.*, for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Owen J. Rader* and *Velta A. Melnbrencis*, trial attorneys), for the defendant.

Before RAO and FORD, Judges, and DONLON, Senior Judge

DONLON, Judge: Two protests are before the court, consolidated for purposes of trial. There are some procedural matters to be adverted to before proceeding to a decision on the merits.

As originally filed, and timely so, the protest in each case protested liquidation of the duty paid entry of 67 bales of flax tow entered as carded flax tow, processed, other, under TSUS item 304.18, at 8 percent ad valorem, claiming that in fact it was classifiable under item 304.12 with duty at the specific rate of $\frac{1}{10}$ cent per pound. Protesting each such liquidation, the remedy sought was to "have the invoice returned to the U.S. Appraiser under Section 520(c)(1)."

In each case the collector of customs at the port of entry, Boston, reported (Customs Form Jun 64–4297), transmitting to the court what he called the "attached protest", stating that "The protested decision was reviewed by me in accordance with section 515, Tariff Act of 1930, and was affirmed."

After evidence had been adduced on trial, defendant raised the issue that there was no proper protest before the court. Presumably this position rested on the contention that there was no timely protest under section 514, and that the collector had not refused to reliquidate under section 520.

Over defendant's objection, the presiding judge granted plaintiff's motion to amend the protests by alternatively claiming that the entry merchandise is properly classifiable under TSUS item 304.12 at the rate of duty of $\frac{1}{10}$ of a cent per pound, as flax waste and advanced waste.

It should be noted that section 514 provides for a protest in writing "setting forth distinctly and specifically, and in respect to each entry * * * the reasons for the objection * * *." Viewed in this frame of language, plaintiff's original protest stated as the reason for objection to the liquidation classification and duty assessment, that the merchandise was properly described in item 304.12, dutiable at $\frac{1}{10}$ cent per pound, and that failure so to describe it in the entry was plaintiff's inadvertent error.

The alternative protest claim inserted on trial adds nothing to the section 514 requirement, save only certain words descriptive of the merchandise, namely, "flax waste and advanced waste". For already, in the protests as they were originally filed, defendant was apprised that the protest claims were under item 304.12. As defendant well knew, that item reads as follows:

Waste and advanced waste_____ 0.1¢ per lb.

Whether or not the protests might have been acceptable as a request for reliquidation to correct a manifest clerical error, there is no occasion now to speculate. Plaintiff does not press any such claim, but rests on the contention that they meet the statutory requirement for protests filed under section 514 and were acted on as such by the collector in reporting to the court the affirmance of his "protested decision".

We agree with our colleagues of the Third Division who recently held that an attempt to correct an error of judgment on the part of the collector in classifying merchandise is a mistake of law and requires protest to be filed within sixty days after liquidation. That filing requirement has been met here. *Fibrous Glass Products, Inc.* v. *United States*, 63 Cust. Ct. 62, C.D. 3874 (1969), (appeal pending).

We proceed now to consider whether plaintiff has proved its claim that the merchandise at bar should be properly classified as waste.

Plaintiff's reliance on *James Fyfe & Co.* v. *United States*, 62 Cust. Ct. 171, C.D. 3718 (1969), seems to us to be ill placed. In that case the parties had stipulated that the merchandise in litigation was flax waste. Here there not only is no such concession on the part of defendant; there is, in fact, active opposition to plaintiff's claim that the merchandise of these entries is waste.

The merchandise before us is known in the trade as flax tow. It is so described in the entry documents, including the invoices. It was so defined by plaintiff's witnesses. It was produced in Belgium from the mature vegetable fiber by successive processes of drying the plants in which the fibers are contained, so that the plant cover becomes straw; "retting" or soaking the straw covers, in order that the straw

may be softened and rot; then again drying the plant; sorting out the good quality fiber and putting aside the balance, which is considered "waste"; and removing the straw from the fiber through a turbine in a process called "scutching".

In this scutching process some of the fibers are knocked off. The product of scutching is what is known as scutched tow, while the long fibers are known as lined flax. The scutched tow, being tangled, or snarled, and full of straw, has to be put through a breaker, to open it up. Then it, like the lined flax, is put through a regular flax tow card, to parallelize the threads and prepare them for spinning.

The merchandise, as imported, was the scutched tow. Subsequent carding operations were performed in this country, after importation.

The long standing judicial definition of waste, in a tariff sense, was well stated in *Harley Co.* v. *United States*, 14 Ct. Cust. Appls. 112, T.D. 41644 (1926), which was recently quoted by Chief Judge Rao with approval in *David Studner et al.* v. *United States*, 63 Cust. Ct. 1, C.D. 3865, 300 F. Supp. 1394 (1969), (appeal pending), as follows:

> In the tariff sense, waste is a term which includes manufactured articles which have become useless for the original purpose for which they were made and fit only for remanufacture into something else. It also includes refuse, surplus, and useless stuff resulting from manufacture or from manufacturing processes and commercially unfit, without remanufacture, for the purposes for which the original material was suitable and from which material such refuse, surplus, or unsought residuum was derived. The latter class of waste might be appropriately designated as new waste and includes such things as tangled spun thread, coal dust, broken or spoiled castings fit only for remanufacture. * * * [P. 4.]

It may be that the scutched tow of this importation might not be waste, within the above language. However, we have here the limiting definition which Congress enacted in the headnotes of schedule 3, part 1, of TSUS. "Waste", for purposes of part 1, is defined to be "scutcher waste (including tow)". The record here is clear that this merchandise is scutcher tow.

In view of the statutory mandate that "unless the context requires otherwise, a a tariff description for an article covers such article" (General Headnotes and Rules of Interpretation, 10(h)), we have no alternative. It is Congress that legislates, not the courts.

Scutched tow, the merchandise of this litigation, is described in TSUS, schedule 3, part 1, headnote 1(a), as waste.

Plaintiff's protest is sustained. All other protest claims are overruled. Judgment will be entered accordingly.