**GENERAL METHODS CORPORATION**

v.

**UNITED STATES.**

**C.D. 4080; Protest No. 68/17172–6819.**

United States Customs Court,
Second Division.

Sept. 25, 1970.

Schwartz & Lidstrom, Chicago, Ill. (Joseph Schwartz, Chicago, Ill., and Rufus E. Jarman, Jr., New York City, of counsel) for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Robert Blanc, Trial Atty., New York City), for defendant.

Before RAO, Chief Judge, and FORD and NEWMAN, Judges.

FORD, Judge:

This case involves the matter of the proper classification of a machine which makes an aluminum capsule for use as a secondary closure for bottles from aluminum foil. The machine was classified as metal-working machine tools, other, under the provisions of item 674.35, Tariff Schedules of the United States, and assessed with duty at the rate of 15 per centum ad valorem.

Plaintiff contends the imported machine is properly subject to duty at the rate of 10 per centum ad valorem under the provisions of item 678.50, Tariff Schedules of the United States, as machines, not specially provided for. An alternative claim under item 662.20, Tariff Schedules of the United States, has not been pressed and is therefore deemed abandoned and is accordingly dismissed.

The pertinent portions of the statutory provisions read as follows:

| | Machine tools: | | | |
|---|---|---|---|---|
| | Metal-working machine tools: | | | |
| 674.30 | Machine tools for cutting or hobbing gears .......... | * | * | * |
| 674.32 | Boring, drilling, and milling machines, including vertical turret lathes .......... | * | * | * |
| 674.35 | Other ................. | 15% ad val. | | |
| 678.50 | Machines not specially provided for, and parts thereof ...... | 10% ad val. | | |

The record consists of the testimony of one witness called on behalf of plaintiff and the introduction in evidence of five exhibits.

This machine utilizes rolls of aluminum foil, four to six inches wide, which are fed through rollers. The foil is 15/10000 of an inch in thickness. A curved knife cuts the foil into blanks which are three to four inches wide. After the blank is cut, it is put on a foil transfer table for placing on a mandrel. The mandrel has vacuum holes which hold the foil on it. A rubber roller then shapes the capsule and a line of glue is placed on the edge of the capsule which holds it together. At the last station, a die embosses the design or brand name on the top of the capsule.

The testimony also indicates that the machine could not utilize foil more than 15/10000 of an inch in thickness as the knife would not cut it and the vacuum would not hold it on the mandrel. In the United States aluminum is used, but in Europe lead foil is also used. The machine differs from boring, drilling and milling machines since it does not remove metal or produce chips and is incapable of making parts of other machines. The machine does not cap the bottle but merely produces the capsule which is a decorative secondary closure used on wine or spirituous liquor.

Plaintiff contends, based upon the record, that it would be unreasonable to treat this machine as a machine tool as that term has long been recognized by Congress. The Summary of Tariff Information, 1921, is cited for the purpose of indicating the type of material machine tools are used upon and their function. Similarly, the Summaries of Tariff Information of 1929 and 1948 are cited as illustrative of the types of machines covered by the predecessor provisions for machine tools. Plaintiff concludes that the Summaries of Tariff Information, *supra*, indicate the intent to include machines using great physical force to change the shape or surface of hard metal. This it is urged is quite different from the aluminum foil used by the imported machine.

In addition, plaintiff relies upon the decision which held a machine tool as being capable of producing machines or machine parts, United States v. Georgia Pulp and Paper Manufacturing Co., 3 Ct.Cust.App. 410, T.D. 32998 (1912), and the fact that every machine that works on metal is not a machine tool. Alex. Benecke v. United States, 30 CCPA 55, C.A.D. 214 (1942); United States v. Kurt Orban Co., Inc., 47 CCPA 28, C.A.D. 724 (1959).

While the foregoing information and decisions have some value under certain circumstances, it is nevertheless the prime function of this court in interpreting the tariff statutes to carry out the intent of Congress. The first consideration to be given to this intent is the following definition provided in the headnotes of subpart F, schedule 6, part 4:

*Subpart F headnotes:*

1. For the purposes of this subpart—

(a) the term *"machine tool"* means any machine used for shaping or surface-working—

(i) metals (including metallic carbides);

(ii) stone, ceramics, concrete, asbestos-cement and like mineral materials, or glass in the cold; or

(iii) wood, cork, bone, hard rubber or plastics, or other hard materials,

whether by cutting away or otherwise removing the material or by changing its shape or form without removing any of it, but does not include rolling mills (item 674.20) or the hand-directed or - controlled tools provided for in items 674.60 and 674.70 of this subpart and in item 683.20 of part 5 of this schedule; and

(b) the term *"metal-working"* includes metallic-carbide-working.

It is evident from a reading of this definition that the intent was to broaden the prior concept of machine tools. It is also apparent that the function of the involved machine fits literally within said definition even though it might not be considered as one of the conventional machine tools. Therefore, unless there is some competent evidence to indicate a contrary intent, the imported machine is subject to classification as a metal-working machine tool as provided for in item 674.35, *supra.*

We are aware of the decision in the case of Pitney-Bowes, Inc. v. United States, 59 Cust.Ct. 181, C.D. 3116, 273 F.Supp. 403 (1967), which held a machine for embossing metal plates for mailing purposes to be office machines rather than machine tools. In that case, in addition to the information cited therein from the so-called Brussels Nomenclature, there was a strong competing provision, to wit, office machines. The court therein concluded that while the embossing machine did perform some of the functions in the definition, it was not of the type involved and was in fact an office machine. This is clearly indicated in the *Pitney-Bowes* case, *supra,* wherein the following statement was made:

In the instant case, the provision for office machines in item 676.30, TSUS, "snugly admits the importation under consideration," certainly far more than the provision for "Metal-working machine tools: * * * Other" * * *.

In the instant case, we do not have a strong competing provision but merely the basket provision for machines.

While the headnote does not indicate the use on "soft" material as alleged by plaintiff, we note that it likewise does not provide or require its use on "hard" metal. There is no dispute that aluminum foil is metal and that the involved machine cuts and shapes it. Accordingly, we are of the opinion that plaintiff has failed to overcome the presumption of correctness attaching to the action of the customs classification.

The protest is therefore overruled.

NEWMAN, Judge:

I concur.

I agree with the views expressed by Judge Ford, but wish to add these observations:

The record establishes that the imported Meta capsule production machine is designed to manufacture "capsules" in various sizes made of thin aluminum foil. These capsules are cylindrical thimble-like objects, and are used as secondary closures for bottles containing wine or other spirituous liquor. The capsules fit over the top of the neck of the bottle and the primary closure (screw cap or cork), and serve to decorate the bottle. The imported machine only manufactures the capsules, and does not put the capsules on bottles.

Briefly, to make the capsules, aluminum foil in rolls is "threaded" through two foil feed rollers which pull the foil through the machine and "index" the foil to a predetermined amount.[1] After the foil is indexed a curved knife cuts the aluminum into curved "blanks." These blanks are then shaped into individual cylindrically shaped capsules by the action of a forming mandrel and a rubber pressure roll. Glue is then applied along the edge of the capsule to hold it together. Additionally, the machine is capable of embossing a design or brand name on top of the capsule.

The machine is powered by two electric motors, is completely automatic, and produces a single item continuously. If different capsules are to be manufactured, the tools must be changed. Respecting such change, the record shows (R. 28–29):

Q. Well, suppose you wanted to make a different capsule with a different brand, what do you do?—A. Well, if it's a different brand, you have to change those twelve mandrels, and then *there are other tools you have to change*, that knife, because you will need a different radius; so, when the capsule is formed, it looks good and the first and second folds, *there are special tools in there that you have to change*. [Emphasis added.]

The Meta capsule production machine was classified by the Government as "Other" metal-working machine tools under item 674.35, TSUS. By statutory definition, "the term *'machine tool'* means any machine used for shaping or surface-working [metals and other named materials] whether by cutting away or otherwise removing the material or by changing its shape or form without removing any of it * * *." Headnote 1, subpart F, part 4, schedule 6 (hereafter the "headnote").

It is clear that the imported machine produces capsules by changing the shape or form of metal, and thus falls squarely within the purview of the headnote. Plaintiff, however, strenuously argues that the imported machine does not meet the requirements of the headnote.

Plaintiff contends:

First, that the instant machine does not "work" on metal, citing United States v. Kurt Orban Co., Inc., 47 CCPA 28, C.A.D. 724 (1959). In that case, a metal scrap baler which compressed loose scrap metal into compact bundles and sheared off the excess metal for convenient handling and transportation was held not to be classifiable as a machine tool under paragraph 372 of the Tariff Act of 1930. The appellate court held that the baler did not "work" on metal in the sense intended by Congress.

In the present case, plaintiff has not established that the functions of the capsule production machine are in any way analogous to those of the scrap baler in *Kurt Orban*. That decision, therefore, fails to support plaintiff's contention that the instant machine does no "work."

Second, that the new definition of machine tool in the TSUS does not indicate

[1]. Webster's Third New International Dictionary (1966) defines the verb "index" as follows: "3. to move (a machine or a piece of work held in a machine tool) so that a specific operation (as the cutting of gear teeth) will be repeated at definite intervals of space."

that Congress intended to classify as machine tools those machines which work on "soft" materials, whether these materials be metal or not. As I read the definition, if the material worked on is, in fact, metal, its degree of hardness or its thickness is of no consequence.

Third, that one of the "established requirements" for classifying an article as a metal-working machine tool is that such article must be capable of producing machines or machine parts. The record establishes that the imported capsule production machine lacks such capability. Cited in support of such a requirement are: United States v. Georgia Pulp and Paper Manufacturing Co., 3 Ct.Cust.App. 410, T.D. 32998 (1912); and Pitney-Bowes, Inc. v. United States, 59 Cust.Ct. 181, C.D. 3116, 273 F.Supp. 403 (1967). I find that these decisions do not support plaintiff's contention.

*Georgia Pulp* arose under the Tariff Act of 1909 in which there was no statutory definition of a machine tool. Relying upon evidence of commercial designation, the court of appeals concluded that a "machine tool" worked on metal and was capable of producing machines or parts thereof. Hence, certain machines used in stripping bark from logs were held not to come within the provision for machine tools in the act of 1909.

Since Congress adopted a special definition for "machine tool" in the TSUS, which may well be broader than the meaning of the term in the trade, the principle of commercial designation applied in *Georgia Pulp* is not controlling under the present statute. For a recent decision of this division giving controlling effect to a definition in a headnote of the tariff schedules, see W. N. Proctor Company v. United States, 64 Cust. Ct. , C.D. 4031 (1970).

*Pitney-Bowes* arose under the TSUS and involved the headnote which is being construed in the present case. In concluding that certain metal plate embossing machines did not fall within the ambit of that headnote, the court made reference to the testimony of witnesses familiar with machine tools as to their opinion of the headnote and as to their understanding of the term "machine tool." These witnesses were frank to admit that the headnote did not define a "machine tool" according to their own concept and standards based on their experience. One of the requirements of a machine tool mentioned by the witnesses was a capability of producing machines or parts thereof.

In all candor, while I think that in *Pitney-Bowes* my associates attached undue significance to the witnesses' understanding of the term "machine tool", in view of the controlling statutory definition, I find nothing in the court's decision that goes so far as to hold that a capability of producing machines or machine parts is a prerequisite of a machine tool under the statutory definition. Certainly such a capability is *not* an express requirement under the headnote. To imply such a requirement in the headnote would be at odds with the rationale of the definition.

It is fundamental, of course, that it is the duty of the court to interpret statutes to reflect Congressional intent. United States v. S. H. Kress & Co., 46 CCPA 135, C.A.D. 716 (1959). And respecting the tariff schedules, this court commented in The Nissho Pacific Corporation v. United States, 63 Cust.Ct. 456, 459–460, C.D. 3936 (1969):

> \* \* \* it would seem elementary that in ascertaining the legislative intent or scope of a provision, *the primary source to be consulted is any relevant interpretive headnote, which Congress provided for such purpose.* [Emphasis added.]

In headnote 1, subpart F, part 4, schedule 6, a "machine tool" is defined by Congress in terms of the *function* or *operation* performed by the machine rather than the *use* of the products which the machine is capable of making. The Meta capsule production machine meets the function or operation specified by the headnote. If Congress had intended to impose the additional requirement now urged by plaintiff, it could

readily have so specified in the headnote. As the appellate court observed in Sandoz Chemical Works, Inc. v. United States, 50 CCPA 31, 34, C.A.D. 815 (1963):

> * * * It was within the province of the Congress to restrict, qualify or impose conditional facets relating to the purpose and scope of the statute. It did not see fit so to do. It is not within the province of this court to amend or to read into the statute by construction that which is not there.

Regardless of the merits of narrowing or restricting the definition of a machine tool prescribed by Congress, this court may not undertake to amend the headnote in the guise of statutory interpretation. Cf. United States v. R. F. Downing & Co., 17 CCPA 194, T.D. 43645 (1929).

Also considered by the court in *Pitney-Bowes* in holding that the embossing machines were not classifiable as machine tools, was the fact that the embossing operation does not cut away or remove any material, nor does it impart a new shape or form to the metal plate itself. Thus, the court concluded that the embossing machine did not meet the requirement of the headnote that the machine be used for "shaping or surface working." In the present case, however, plaintiff makes no contention that the machine does not impart a new shape or form to the metal. Moreover, the embossing machines were shown to be used in offices for doing office work; while in the present case, the capsule production machine was shown to be an industrial machine. In view of the foregoing, *Pitney-Bowes* is plainly distinguishable from the instant case.

Finally, plaintiff argues that "[t]he instant machine bears no resemblance to machines which have long been recognized by Congress, the Courts, the Tariff Commission and the trade as machine tools." In this connection, plaintiff makes reference to certain discussions in the 1921, 1929, and 1948 Summaries of Tariff Information and the Explanatory Notes to the Brussels Nomenclature. It would unduly lengthen this concurring opinion to recite from these authorities; it suffices to state that there is nothing therein which is in derogation of Congressional intent to classify a machine such as that involved here as a metal-working machine tool under item 674.35.

In light of the foregoing considerations, I agree with Judge Ford that the Meta capsule production machine was properly classified by the Government, and that the protest should be overruled.

RAO, Chief Judge (dissenting).

For the reasons stated below I am not in accord with the holding that the machine involved herein is properly classifiable as a metal-working machine tool under item 674.35 of the Tariff Schedules of the United States.

The headnote to schedule 6, part 4, subpart F, defines a machine tool as any machine used for shaping or surface-working metals and other named materials "whether by cutting away or otherwise removing the material or by changing its shape or form without removing any of it." In explanation of this provision, the Tariff Classification Study states (schedule 6, p. 271):

> Headnote 1 defines the term "machine tool" more broadly than it is defined in the present provisions of paragraph 372 where it is defined as "any machine operating by other than hand power which employs a tool for work on metal". Under the proposed definition the term would apply not only to metal-working tools but also to machines used for shaping or surface-working stone, ceramics, concrete, asbestos, cement, and like mineral materials, glass in the cold, wood, cork, bone, hard rubber or plastics, or other *hard* materials. These latter machine tools are significant articles of trade and it is desirable to have a separate provision therefor in the proposed schedules. [Emphasis supplied.]

The machine involved herein produces foil capsules for bottles by cutting out pieces of aluminum foil, applying a line

of glue, and folding the foil in stages around a mandrel. According to the testimony it does not remove metal or produce chips or cut and carve out metal. It could not be used to make another machine. It can operate only on thin aluminum foil, which the witness called "dead soft". It does not change its shape or form permanently.

While the reference to "hard materials" in the Tariff Classification Study, *supra*, is made in connection with materials other than metal, it is an indication that in using the word "metal" Congress had in mind metals in the form of hard materials and not foil. Metal leaf and foil are provided for in the tariff schedules separately in the portion of the metal schedule which covers "Metal Products" (part 3) rather than under the portion which covers "Metals, Their Alloys, and Their Basic Shapes and Forms" (part 2).

While it is clear that the definition of machine tools in the tariff schedules has been broadened from that in previous tariff acts to include machines which work on materials other than metal, in view of the meaning long given to the term "machine tools" under prior tariff acts, it is doubtful that Congress intended it to include "any tool which changes the shape, size, or even the position of a piece of metal in any manner and for any purpose." United States v. Kurt Orban Co., Inc., 47 CCPA 28, 30, C.A.D. 724 (1959).

In the case cited it was held that a scrap baler which compressed metal scrap and sheared off the edges of the bale was not a machine tool. That case was referred to in hearings before the Tariff Commission when the proposed tariff schedules were being prepared, at which time the Assistant General Counsel stated (Tariff Classification Study, Schedule 6, p. 649):

Mr. Shewmaker. I can assure you on your last question relating to machine tools that we do not contemplate when we speak of a machine used for shaping or surface work that we would be treating with anything such as a scrap baler.

We are not intending to put a scrap baler into the provisions for machine tools.

Another indication of the type of machine Congress meant by the term "machine tool" is found in the articles specifically listed under "machine tools" in the tariff schedules, namely, machines for cutting or hobbing gears, boring, drilling, and milling machines, turret lathes, and reciprocating gang-saw machines.

In Pitney-Bowes, Inc. v. United States, 59 Cust.Ct. 181, C.D. 3116, 273 F.Supp. 403 (1967), appeal dismissed 55 CCPA 115 (1967), this court had occasion to consider the meaning of the definition of machine tool in the tariff schedules. In the course of the opinion reference was made to descriptions and lists of machine tools which appeared in the Summaries of Tariff Information of 1921, 1929, and 1948, and in the explanatory notes to the "Nomenclature for the Classification of Goods in Customs Tariffs" (the "Brussels Nomenclature"). After considering these sources and the testimony of witnesses who had had extensive experience in the machine tool field, it was held that an embossing machine which impressed letters or characters into a metal plate was not a machine tool. The court stated (pp. 193–194, 293 F.Supp.):

We conclude that when all the language referring to metal-working machine tools in subpart F, part 4, of Schedule 6, is considered as a whole, a construction which would result in holding the embossing machines before us to be machine tools would not be in harmony with the intent of Congress. It would not be in accord with the long-time meaning given to the term "machine tools" by those experienced in the field or by the authorities cited. We think it quite clear from the sources used by the Tariff Commission in drawing up the definition in headnote 1, the material in the

Tariff Classification Study, and the language of the subpart as a whole that there was no intention to so broaden the meaning of the term "machine tool" as to take in all machines which in any way change the shape or form of metal regardless of their capability of shaping or surface-working, as those terms are understood in the field, or of producing other machines or parts of machines, or of their being industrial equipment and regarded by those in the field as machine tools.

A re-examination of the authorities and sources referred to in the above opinion discloses that the instant machine does not fall within any of the categories mentioned, which include lathes, milling, drilling and boring machines, forging, stamping and die-stamping machines, metal-working presses, extruding presses, riveting machines, swaging machines, shearing, punching and notching machines, and machines for drawing wire. The only type bearing a resemblance to the machine here involved is described in the explanatory notes to the Brussels Nomenclature (vol. III, p. 882)

as "Plate or sheet working machines, including machines for flattening, bending, shaping (including spinning lathes), corrugating, folding (including folding together and squeezing the edges of sheets to join them), etc." However, "plate and sheet" are hard metals whereas the instant machine operates only on soft metal foil. Therefore, it does not belong in the category of plate and sheet working machines.

Even assuming that the instant machine fits literally within the definition of machine tools in the tariff schedules, it is not necessarily so classifiable. It is not unusual to hold that a tariff term does not include everything that literally falls within that term, where the context or other circumstances indicate the contrary. United States v. Andrew Fisher Cycle Co., Inc., 426 F.2d 1308, 57 CCPA , C.A.D. 986 (1970), and cases cited.

In view of all the foregoing, I am of opinion that the instant machine is not a machine tool within the intent of Congress. I would sustain the claim for classification under item 678.50, as a machine not specially provided for.