59 CCPA

**GENERAL METHODS CORPORATION, Appellant,**

**v.**

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5437.**

United States Court of Customs and Patent Appeals.

May 4, 1972.

Barnes, Richardson & Colburn, New York City, attys. of record, for appellant. Joseph Schwartz, Rufus E. Jarman, Jr., New York City, of counsel.

L. Patrick Gray, III, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Robert Blanc, New York City, for U. S.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

BALDWIN, Judge.

This appeal is from the decision and judgment of the United States Customs Court, Second Division,[1] overruling appellant's protest concerning the classification of merchandise identified as an "Automatic Meta Capsule Production Machine." The merchandise was classified under item 674.35, TSUS, as metal

1. 65 Cust.Ct. 212, 317 F.Supp. 273, C.D. 4080 (1970).

working machine tools. Appellant claims that the imported merchandise is properly classifiable as a machine, not specially provided for, under item 678.50, TSUS.

The pertinent provisions of the Tariff Schedules read as follows:

Schedule 6—Part 4

Subpart F.—Machines for Working Metal, Stone, and other Materials

*Subpart F headnotes:*

1. For the purpose of this subpart—

(a) the term "machine tool" means any machine used for shaping or surface-working—

(i) metals (including metallic carbides);

(ii) stone, ceramics, concrete, asbestos-cement and like mineral materials, or glass in the cold; or

(iii) wood, cork bone, hard rubber or plastics, or other hard materials,

whether by cutting away or otherwise removing the material or by changing its shape or form without removing any of it, but does not include rolling mills (item 674.20) or the hand-directed or-controlled tools provided for in items 674.60 and 674.70 of this subpart and in item 683.20 of part 5 of this schedule; and

(b) the term "metalworking" includes metallic-carbide-working.

* * * * * *

Machine tools:

Metalworking machine tools:

* * * * * * *

674.35 Other ....................15% ad val.

Subpart H.—Other Machines

* * * * * * *

678.50 Machines not specially provided for * * * 10% ad val.

The imported machine converts aluminum foil into capsules which are used as decorative secondary closures on wine or liquor bottles. A concise description of the operation of the machine appears in the majority opinion of the Customs Court:

This machine utilizes rolls of aluminum foil, four to six inches wide, which are fed through rollers. The foil is 15/10000 of an inch in thickness. A curved knife cuts the foil into blanks which are three to four inches wide. After the blank is cut, it is put on a foil transfer table for placing on a mandrel. The mandrel has vacuum holes which hold the foil on it. A rubber roller then shapes the capsule and a line of glue is placed on the edge of the capsule which holds it together. At the last station, a die embosses the design or brand name on the top of the capsule.

The testimony also indicates that the machine could not utilize foil more than 15/10000 of an inch in thickness as the knife would not cut it and the vacuum would not hold it on the mandrel. In the United States aluminum is used, but in Europe lead foil is also used. The machine differs from boring, drilling and milling machines since it does not remove metal or produce chips and is incapable of making parts of other machines. The machine does not cap the bottle but merely produces the capsule which is a decorative secondary closure used on wine or spirituous liquor.

Appellant contends that the indicia of legislative intent behind the Tariff Schedules suggest that machines which do not work on *hard* materials are to be excluded from classification as machine tools. Appellant's witness characterized the aluminum foil on which the imported machine operates as being "dead soft." Appellant cites the following discussion of Headnote 1, *supra,* from the Tariff Classification Study, Schedule 6, at 271 (1960):

Headnote 1 defines the term "machine tool" more broadly than it is defined in the present provisions of paragraph 372 where it is defined as "any machine operating by other than hand power which employs a tool for work

on metal". Under the proposed definition, the term would apply not only to metal-working tools but also to machines used for shaping or surface-working stone, ceramics, concrete, asbestos, cement, and like mineral materials, glass in the cold, wood, cork, bone, hard rubber or plastics, or other *hard* materials. These latter machine tools are significant articles of trade and it is desirable to have a separate provision therefor in the proposed schedules. [Italics supplied.]

From this appellant concludes:

> The reference to "hard materials" is a clear indication that the allusion to machines for shaping or surface-working metals in the headnote definition, was aimed at machines working on *hard* metals, and not "dead soft" aluminum foil.

Appellant points to descriptions and lists of machine tools and metal working machines other than machine tools which appear in the Summaries of Tariff Information of 1921, 1929 and 1948 for the proposition that "metal working machine tools" means "those which use tremendous physical force to change the physical shape or surface of hard, solid, metal." Appellant also refers to the explanatory notes to the Brussels Nomenclature and several cases, including United States v. Kurt Orban Co., 47 CCPA 28, C.A.D. 724 (1959) and Pitney-Bowes, Inc. v. United States, 59 Cust.Ct. 181, 273 F.Supp. 403, C.D. 3116 (1967) in support of its position.[2]

Judge Ford wrote for the majority in the Customs Court. After considering the definition of "machine tool" contained in Headnote 1(a) of Subpart F, *supra*, he stated:

> * * * [T]he function of the involved machine fits literally within said definition even though it might not be considered as one of the conventional machine tools. Therefore, unless there is some competent evidence to indicate a contrary intent, the imported machine is subject to classification as a metal-working machine tool as provided for in item 674.35, *supra*.

Judge Ford distinguished the *Pitney-Bowes* case, which dealt with machines for embossing addresses on metal plates, on the basis that there was a strong competing provision in that case (office machines), while in this case item 674.35 competes for the merchandise with merely a basket provision. Judge Newman wrote a concurring opinion in which he agreed with the views expressed by Judge Ford. Judge Newman went on to distinguish the *Kurt Orban* case, stating that it had not been established that the functions of the imported machine "are in any way analogous to those of the scrap baler in *Kurt Orban.*" Chief Judge Rao dissented, essentially for the reasons urged here by appellant.

## OPINION

Tariff provisions do not necessarily include everything that falls within their literal meaning. See United States v. Andrew Fisher Cycle Co., Inc., 57 CCPA 102, 107, 426 F.2d 1308, 1311–1312, C.A.D. 986 (1970), and cases cited therein. However, the basis for avoiding the literal interpretation of a provision must be clearly established. We agree with the majority of the Customs Court that there is no solid evidence in this case of a legislative intent to exclude machines such as the one at bar from the meaning of "machine tool."

Assuming *arguendo* that item 674.35 was intended to include only machines which dealt with "hard" materials, it has not been established in this record whether the "dead soft" aluminum with which the present machine deals is or is not a "hard" material in the context of the statute. The testimony of appellant's witness leaves the court to speculation as to how hard "dead soft" aluminum is. Further, there is no evidence as to the degree of hardness of those

2. The authorities cited by appellant are discussed in the opinion in the *Pitney-Bowes* case, *supra*.

materials which Headnote 1 of Subpart F specifically includes such as wood and cork. Thus appellant is asking us to rule that while aluminum is a metal, and thus literally comes within Headnote 1(a) (i) *supra*, the intent of the drafters requires that the instant machine be removed from the operation of that headnote because the aluminum is not a hard enough material. We decline to do so, since for all we know from the present record, the aluminum used may be harder than some of the materials listed as exemplars in the statement quoted from the Tariff Classification Study, *supra*, or in the Headnote itself. We need not rule on appellee's argument that the phrase "other hard materials" was used only in connection with materials other than metal.

Appellant's second major argument is that the present machine does not fit within the common or commercial meaning of the phrase "machine tool." The evidence in this case is not sufficient to establish that proposition. The most probative evidence in this record with regard to that issue was given by appellant's witness in comparing the instant machine to boring machines, drilling machines, milling machines and lathes. The witness pointed out that those machines all removed metal, whereas the instant machine does not, and that "you would have to use machine tools to make our machine, where our machine could not be used to make any of those other machines." The authorities cited by appellant to show what machine tools are indicate that there are machine tools which do not remove metal, and that there are machine tools which are not useful to make other machines. Moreover, the functions of many of the machine tools listed in appellant's authorities are very similar to the cutting—forming—folding—stamping functions of the machine at bar. Thus, even assuming that the definition found in Headnote 1 includes only those tools which would be commercially recognized as machine tools,[3] appellant has failed to establish his case.

We agree with the majority of the Customs Court that the cases cited by appellant are not controlling here. With regard to the *Pitney-Bowes* case, *supra*, we note that there was apparently sufficient evidence to establish that the machines under consideration would *not* have been considered "machine tools" in commercial parlance. Such is not the case here.

Since appellant has failed to rebut the presumption of correctness of the original classification, the judgment of the Customs Court is affirmed.

Affirmed.

59 CCPA

3. In the view we take of the case we need not reach this issue, for if the statutory definition does differ from the common meaning of "machine tool," it is clearly broader than that meaning. Note that there are no requirements that a machine must remove metal or be able to make other machines to be a "machine tool" under the statutory definition.