**DATA PRODUCTS CORPORATION,**
**Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 79–6–00965.**

United States Court
of International Trade.

Dec. 8, 1982.

(ii) bookbinding and printing machinery (see subpart D of this part);

* * * * * * *

2. For the purposes of this subpart—

(a) the term "office machines" refers to machines which are used in offices, shops, factories, workshops, schools, depots, hotels, and elsewhere, for doing work concerning the writing, recording, sorting, filing, mailing of correspondence, records, accounts, forms, etc., or for doing other "office work", and which have a base for fixing or placing them on a table, desk, wall, floor, or similar place; and

* * * * * * *

[Typewriters, addressing machines, etc., calculating machine, etc., and office machines not specially provided for]

* * * * * * *

Parts of the foregoing:

* * * * * * *

| | | |
|---|---|---|
| 676.52 | Other . . . . . . . . . . . . . . . . . . . . . . | 35% ad val. (Column 2) |

Stein Shostak Shostak & O'Hara, Los Angeles, Cal. (S. Richard Shostak, Los Angeles, Cal., at trial and on briefs), for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Attorney in Charge, Intern. Trade Field Office, Commercial Litigation Branch, New York City (Jerry P. Wiskin, New York City, at trial and on brief), for defendant.

MALETZ, Judge.

Presented for determination in this action is the question whether certain articles are properly classified as parts of office machines or parts of printing machinery. The articles—paper feed tractors and character drum assemblies which are parts of line printers—were classified as parts of office machines under item 676.52 of the Tariff Schedules of the United States (TSUS) and assessed the Column 2 rate of 35 percent ad valorem. "Office machines" are defined in the TSUS as follows:

Classified Under Schedule 6, Part 4

Subpart G.—Office Machines

Subpart G headnotes:

1. This subpart does not cover—

* * * * * * *

Plaintiff maintains that as parts of line printers the articles should properly have been classified under item 668.50 as "other parts of printing machinery" at the Column 2 rate of 25 percent ad valorem. The provision in the TSUS for printing machinery states:

Claimed Under Schedule 6, Part 4

* * * * * * *

Subpart D.—Pulp and Paper Machinery; Bookbinding Machinery; Printing Machinery

* * * * * * *

Printing machinery:

* * * * * * *

| | | |
|---|---|---|
| 668.20 | Other, including printing presses, offset duplicating machines, and stencil copy machines . . . . . . . . . . . . . . . | 25% ad val. (Column 2) |

* * * * * * *

| | | |
|---|---|---|
| 668.50 | Other parts of printing machinery . . . | The rate for the article of which they are parts. [25% ad val, derived from Item 668.20 (Column 2)] |

At the trial the parties entered into six stipulations:

1. The subject drums and tractors are parts of line printers.

2. The chief use of these line printers is as a component of automatic data pro-

cessing systems to obtain permanent record "hard copy."

3. The sole function of line printers is to print.

4. The line printers are machinery.

5. The line printers are chiefly used in offices as that term is defined in the Tariff Schedules of the United States.

6. Line printers are known by this name in the trade and commerce of the United States.

More particularly, a line printer is a machine which permits high speed production of typed matter—called "hard copy"—from computer data sources. It has four basic operational parts: the character drum, the paper feed tractor, a ribbon system and hammers.

The character drum has alphabetical, numerical and punctuation characters arranged around its circumference with each different symbol appearing 132 times next to each other in a straight row. In operation the drum constantly spins at several hundred revolutions per minute while an electronic impulse causes hammers to fly out and strike the ribbon, the paper and the desired character on the drum. The result is that the characters required for a particular line are reproduced on the paper. For example, if the letter "a" is required in five spaces on a line, five hammers will strike the appropriate spot as the "a's" on the drum rotate past. In rapid succession each character will be typed in the appropriate space on the same line as the drum rotates. The line printer is able to recognize when the drum has completed one full revolution. At that time the paper feed tractor advances the paper so that the next line can be typed. This technology permits the production of hard copy from data sources as fast as 300 lines per minute in the case of plaintiff's Model 2230 line printer.

Against this background, and for the reasons that follow, it must be concluded that the imported articles are not parts of print-

ing machinery, as claimed by plaintiff, but rather were properly classified as parts of office machines under item 676.52.

Plaintiff advances three arguments in support of its position that the importations are parts of printing machinery. First, it argues that the imported articles are integral parts of line printers whose sole function is to print data, letters, inventories and all types of printed matter. Next, plaintiff contends, since line printers are classified as printing machinery by the U.S. Patent Office, they should be similarly classified under the customs laws. Finally, it maintains that under the rule of relative specificity the provision for "printing machinery" is more specific than the provision "office machines not specially provided for." This latter provision, plaintiff emphasizes, expressly excludes printing machinery.

Defendant, on the other hand, contends that line printers are not printing machinery for tariff purposes but rather are peripheral equipment to data processing machines which are used primarily in offices. Accordingly, defendant argues, inasmuch as the imported articles are parts of those line printers, they are properly classifiable under item 676.52.

There is no dispute that the sole function of a line printer is to print matter. *See* third stipulation, *supra.* Nor is there any question that a line printer's function is to produce "printing" as that term is generally defined in dictionaries.[1] Nevertheless, the fact that line printers perform a printing function does not inexorably lead to the conclusion that line printers are ipso facto classifiable as printing machinery for tariff purposes.

First, "[t]ariff provisions do not necessarily include everything that falls within their literal meaning." *General Methods Corp. v. United States,* 59 CCPA 109, 112, C.A.D. 1049, 458 F.2d 521, 523 (1972). *See also United States v. Texas Instruments, Inc.,* 69 CCPA ——, 673 F.2d 1375 (1982) (solid state

---

1. Webster's Third New International Dictionary (1963) defines "printing" as

reproduction (as on paper or cloth) of an image from a printing surface made typically by a contact impression that causes a transfer of ink.

electronic watches, which were marketed and commercially accepted as watches, not watches for tariff purposes); *Nippon Kogaku (USA) v. United States,* 69 CCPA ——, 673 F.2d 380 (1982) (slit lamp microscopes not microscopes for the purposes of the tariff schedules). *See generally* R. Sturm, Customs Law and Administration §§ 50.1, 52.6 (1980). Thus, the fact that line printers perform a printing function is insufficient, standing alone, to render the parts thereof parts of printing machinery under the TSUS.

While plaintiff argues that line printers perform the function of printing and are commonly known as printers, it is evident both from lexicographic sources and the record that they are invariably utilized in conjunction with data processing equipment and are, therefore, distinguishable from printing machinery which is used primarily in the graphic arts.

Turning first to the lexicographic sources, a review of these authorities reveals that a clear dichotomy exists between printing machinery and machines which print out computer material.[2] Illustrative is the *McGraw Hill Dictionary of Scientific and Technical Terms* (2d ed. 1974) which, at page 293, defines a line printer as:

[ADP] A device that prints an entire line in a single operation, without necessarily printing one character at a time.

"[ADP]" identifies line printers as being used primarily in "automatic data processing." Printing machinery, on the other hand, is identified under the heading "[GRAPHICS]", indicating that graphic arts is its primary field of use. *Id.* at xi.

In Strauss, The Printing Industry 133 (1967), a distinction is made between "printout" and "printing":

*Printout equipment.* Computers can provide a record of the processed product in alphabetic characters and decimal fig-

ures. The equipment whereby this record is produced is called a printing device or, more specifically, a rack-type, or a type-wheel (cylinder or drum), or a spinning-disk, or a chain printer, depending on the main feature of construction. In this manual the word printer is reserved for people active in the graphic arts industry and the word printing for quality reproductions of original images as printed images. The word printout, which is part of computer terminology, will be used as an adjective to characterize machinery and as a noun to identify the product of machinery used to reconvert the encoded result of computer processing into readable, alphabetic, and numeric characters. This usage will avoid confusion in the minds of graphic arts people and be easily understandable to computer technicians.

*Printout machines are much closer to typewriters than to printing equipment.* Like typewriters printout devices have a single permanent assortment of characters; these are impressed on the paper with a carbon ribbon, similar to carbon ribbons of typewriters. The product of printout machines can be a single copy or a number of carbon copies, 4 or 5, to mention a figure. If more copies are needed these must be made by replicating (a term preferred in contemporary literature to the more customary duplicating) or by printing. [Emphasis added.]

Finally, *Van Nostrand's Scientific Encyclopedia* (5th ed. 1976), at page 1930, describes line printers as being used in connection with computers:

PRINTER (Data Processing). A device for producing a legible record of information from a computer. . . . A line printer is a device capable of printing one line of characters across a page, i.e., 100 or more characters simultaneously as continuous paper advances line by line in one di-

---

**2.** In construing tariff terms, it is basic that in the absence of a contrary legislative intent, the common meaning controls. *International Spring Mfg. Co. v. United States,* 85 Cust.Ct. 5, C.D. 4862, 496 F.Supp. 279 (1980), *aff'd,* 68 CCPA ——, C.A.D. 1251, 641 F.2d 875 (1981). The common meaning of a term is a matter of law to be determined by the court, for which purpose the court may consult dictionaries and other authorities as an aid to the court's own knowledge. *Trans-Atlantic Company v. United States,* 60 CCPA 100, 102, C.A.D. 1088, 471 F.2d 1397, 1398 (1973).

rection past type bars or a type cylinder that contains all characters in all required positions.

Thus, lexicons and encyclopediae do not associate line printers with printing machinery used in the field of graphic arts but rather with machinery used in the field of data processing. While line printers do perform the function of printing information, they are not printing machinery for purposes of the printing or graphic arts trade.

The record also makes it abundantly clear that line printers are used as peripheral equipment with data processing machines, tape decks and other devices which store information and eventually convert that information into hard copy. Each application of the line printer described in the record was in conjunction with receiving an electronic signal from a source such as magnetic tape or similar medium which programmed the line printer to reproduce particular variable data. The testimony elicited at the trial indicates that line printers are extremely useful in situations where variable information is to be printed, such as the printing of names and addresses on personalized bank checks, mass mailings, and food market labels. It is further apparent from the record that line printing must be done in conjunction with a computer data source which stores the variable information to be reproduced.

In summary, lexicons and related authorities, as well as the record, show that in every application line printers are used with some kind of data processing equipment. Line printers are thus clearly equipment used peripherally to data processing machines. And under item 676.12 of the TSUS, data processing machines are expressly classified as office machines. Similarly, output equipment for data processing machines has been classified as parts of office machines under item 676.52 of the TSUS. *See, e.g., Kores Mfg. Corp. v. United States,* 3 CIT ——, 545 F.Supp. 1303 (1982) (ribbon for daisy wheel printers used as part of word processing machines properly classifiable as parts of office machines under item 676.52). Accordingly, the court concludes that inasmuch as line printers are in essence components of data processing machines, the importations were properly classified as parts of office machines under item 676.52.

Plaintiff, though, points out that the U.S. Patent Office classifies the imported merchandise in class 101 which under its system of classification is the classification for printing. However, "there is no correlation between the manner in which patents are classifiable by the Patent Office and the manner in which merchandise is classifiable under the provisions of the Tariff Schedules of the United States." *Mattel, Inc. v. United States,* 76 Cust.Ct. 84, 91–92, C.D. 4639 (1976). *See also International Spring Mfg. Co. v. United States,* 85 Cust.Ct. 5, 8, C.D. 4862, 496 F.Supp. 279, 282 (1980), *aff'd,* 68 CCPA ——, C.A.D. 1257, 641 F.2d 875 (1981).

Finally, given the court's conclusion that the importations are not parts of printing machinery, any argument based on relative specificity is foreclosed. *See Hismoco (American) Co. v. United States,* 81 Cust.Ct. 32, C.D. 4762 (1978).

For the foregoing reasons, the classification of the importations under item 676.52 is affirmed and the action is dismissed.