SUMITRONICS INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 89–03–00148

(Decided January 31, 1995)

*George R. Tuttle, III* for plaintiff.
*Frank W. Hunger,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, United States Department of Justice, *(Mark S. Sochaczewsky* and *Bruce N. Stratvert), Sheryl A. French,* United States Customs Service, of counsel, for defendant.

## OPINION

DICARLO, *Chief Judge:* Plaintiff Sumitronics Inc. contests the denial of protests filed pursuant to section 515 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1515 (1988). Plaintiff moves for summary judgment pursuant to USCIT R. 56(a), requesting that the court sustain plaintiff's protests and direct the United States Customs Service to reliquidate the imported merchandise under plaintiff's proposed classification. The court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (1988).

## BACKGROUND

The imported merchandise consists of electrostatic writing heads used in Benson/Schlumberger 3000 Series 36″ and 48″ Color Electrostatic Plotters (CES 3000). Plotters—electronic data output devices—are used to reproduce, on paper, graphic images designed on a computer system. The CES 3000 accomplishes this through a toner bed and a matrix of wires which charge the paper with electricity. When the paper passes over the toner bed, the toner adheres to the charged sections, producing an image. The dimensions of the CES 3000 are 43 inches in height, 33 inches in length, and either 51.25 or 64 inches in width depending on the model.

The United States Customs Service classified the writing heads under Item 710.80 as

> Drafting machines, compasses, dividers, ruling pens, lettering pens (including fountain-pen type) used by draftsmen, pantographs, drawing curves, rulers, scribers, straight edges, disc calculators, slide rules, and other instruments, all the foregoing which are drawing, marking-out or mathematical calculating instruments; hand styluses; micrometers, calipers, gauges, balancing machines, and non-optical measuring or checking instruments, apparatus, and machines not specially provided for; and parts of the foregoing articles:

> *          *     *     *     *     *     *     *

710.80   Other.

Item 710.80, Subpart C, Part 2, Schedule 7, of the Tariff Schedules of the United States (1987) (TSUS). Duty was assessed at 4.9% *ad valorem*. Sumitronics contends the writing heads are properly classifiable under Item 676.54, Subpart G, Part 4, Schedule 6, TSUS (1987), as "[p]arts of automatic data-processing machines and units thereof, other than parts incorporating a cathode ray tube."

## DISCUSSION

At issue is whether the article in which the imported electrostatic writing heads are used constitutes a drawing machine within the scope of Item 710.80, TSUS, or, as plaintiff advocates, a printer for automatic data processing machines under Item 676.30, TSUS. If the machines in which the writing heads are used may not be properly classified under Item 710.80 as drawing machines, it follows the writing heads also may not be classified as parts of drawing machines. *See generally Kores Mfg. Corp. v. United States,* 3 CIT 178, 190, 545 F. Supp. 1303, 1312 (1982). The court finds the writing heads are part of a printer for an automatic data processing machine and properly classifiable under Item 676.54, TSUS.

1. *The CES 3000 is Not a Drawing or Drafting Machine:*

Customs contends that the electrostatic writing heads and their plotters serve the same essential function, purpose, and use as the drawing machines in Item 710.80. Customs argues that as "a machine which creates 'drawings' by manipulating ink and paper under the direction of human beings, * * * [the plotter] is an output device which serves the purpose, use, and function of a drawing machine." (Def.'s Opp'n to Mot. Summ. J. at 4 n.3.) According to Customs, even if the machine constitutes a computer output device, it is merely an advancement of a traditional drawing machine, and therefore is properly classified under Item 710.80, TSUS. *Id.*

These contentions were previously rejected by the court. In *Apple Computer, Inc. v. United States,* 14 CIT 77, *mot. denied,* 14 CIT 719, 749 F. Supp. 1142 (1990), the court found the imported plotters in that case did not "bear an 'essential resemblance' to 'drafting machines,'" nor drawing machines. *Id.* at 85. The court in *Apple Computer* distinguished drafting machines from plotters, noting that traditional drafting machines were used by designers to assist in the creation of drawings by hand, while plotters were exclusively used peripherally with computers. *Id.* at 86. Hence, the court interpreted the terms "drafting and drawing machines" to encompass purely hand-held, mechanical instruments. *Id.*

The court finds no issue of material fact in this action. A motion for summary judgment may be granted only when there is no genuine issue as to a material fact; the court may not resolve disputed issues of material fact on its own. *United States v. Peerless Ins. Co.,* 12 CIT 1182, 1189, 703 F. Supp. 955, 961 (1988). Here, the government concedes that, if this court follows *Apple Computer,* then the court could not classify the writing heads as parts of drawing or drafting machines.

It is undisputed that the CES plotters are to be used with a computer and are not designed to assist persons in drawing by hand. (Def.'s Resp. to Pl.'s Stmt. Facts Not in Issue ¶¶ 4, 8; Pl.'s Resp. to Def.'s Stmt. Mat. Facts in Issue ¶ 2.) Although the plotters in *Apple Computer* are distinguishable from the CES plotters in appearance, they are both computer peripherals that translate data received into images upon paper. Neither the *Apple Computer* plotter nor the CES plotter assist in the design or creation of the drawings themselves, rather, they merely assist in the recording and writing of what was created on a data processing machine.

Further, the mere fact that the CES plotters are capable of producing drawings and graphic images does not necessarily make them drawing machines. *See General Methods Corp. v. United States*, 59 CCPA 109, 112, 458 F.2d 521, 523 (1972) (noting that "[t]ariff provisions do not necessarily include everything that falls within their literal meaning.") The court, instead, looks to the principal function of the plotters. As the CES 3000 is designed for use with a computer, rather than to assist designers in the actual drafting or drawing process, it is not properly classified under Item 710.80, TSUS.

Principles of statutory construction support this argument. The doctrine of *noscitur a sociis* provides that associated words explain and limit each other. *Apple Computer*, 14 CIT at 86. The devices listed after "drafting machines" in the provision describing the class for Item 710.80 consist of hand-held instruments—such as compasses or rulers—intricately involved in the actual production of the design. These implements are distinguishable from the CES 3000, which is neither a hand-held instrument nor involved in the actual drawing or drafting.

As the CES plotter is not a mechanical tool designed to assist in the creation of drawings by hand, under *Apple Computer*, its classification as a drafting or drawing instrument is improper. The court again finds "[u]nder these circumstances, *stare decisis* counsels the Court to follow [its] prior decisions. Defendant should address its arguments to our appellate court." *American Lamb Co. v. United States*, 9 CIT 260, 262, 611 F. Supp. 979, 981 (1985), *vacated on other grounds,* 4 Fed. Cir. (T) 47, 785 F.2d 994 (1986).

### 2. *The CES 3000 is Properly Classified as an "Office Machine":*

Plaintiff submits that the proper classification of the CES writing heads is under Subpart G, "Office Machines," specifically Item 676.54, TSUS, "[p]arts of automatic data-processing machines, and units thereof other than parts incorporating a cathode ray tube."

Customs argues that the CES 3000 is not an "office machine" because it is used for the design phase in production/manufacturing, rather than in a typical office. (Def.'s Supp'l. Mem. at 5–7.) Customs limits its definition of "office," and thus "office work," to encompass only activities which are primarily administrative.

Although the question of whether merchandise fits within the meaning of a tariff term is a question of fact, the common meaning of that tariff term is a question of law. *E.M. Chems. v. United States,* 9 Fed. Cir. (T) 33, 35, 920 F.2d 910, 912 (1990). There is no dispute that the CES 3000 is a computer device for the output of drawings created on an automatic data processing machine, *(see* Def.'s Resp. to Pl.'s Stmt. of Mat. Facts Not in Issue ¶ 4,) nor any dispute as to how the CES 3000 operates, (Def.'s Stmt. of Add'l Mat. Facts Not in Issue ¶ 6.) The sole issue for the court to decide, therefore, is whether the definition of "office machines" includes computer output devices used to print technical schemata.

When ascertaining the plain meaning of a statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole. *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 405 (1988). Headnote 2(a) of Subpart G defines "office machines" as

> machines which are used in offices, shops, factories, workshops, schools, depots, hotels, and elsewhere, for doing work concerning the writing, recording, sorting, filing, mailing of correspondence, records, accounts, forms, etc., or for doing other "office work", and which have a base for fixing or placing them on a table, desk, wall, floor, or similar place * * *.

Headnote 2(a), Subpart G, Part 4, Schedule 6, TSUS (1987).

According to the headnote, an office machine may be used in a wide variety of settings. Thus, the statute cannot be narrowly confined to machines used in an "office."

Further, as a computer output device for printing engineering schemata, maps and geological surveys, lofting drawings for the aerospace industry, and semiconductor designs, (Pl.'s Ex. A, CES 3000 Product Brochure,) the CES 3000 writes computer data—the product of a prior cognitive process—in tangible form. The CES 3000, therefore, does not act as a tool in the creation of the drawing itself, but merely serves to record it on paper. *(See* Def.'s Resp. to Pl.'s Stmt. of Material Facts Not in Issue ¶ 6.) In this sense, the CES 3000 performs the type of activities which constitute "office work." *See Data Prods. Corp. v. United States,* 4 CIT 234, 238–39, 558 F. Supp. 124, 128 (1982).

Customs argues that the CES 3000 is distinguishable from other output devices, such as the *Apple Computer* plotter, due to its larger size. (Def.'s Supp'l. Mem. at 4–6.) Particularly, Customs argues that, while the output of the *Apple Computer* plotter could serve as "correspondence, records, accounts, forms, * * * or * * * other 'office work,'" the large-scale output of the CES 3000 reveals its role in production and manufacturing. *Id.* Customs contends that production and manufacturing are outside of the scope of "office work." *Id.*

These arguments are unpersuasive. That the output from the CES 3000 may be larger than that produced on the *Apple Computer* plotter does not mean that the CES 3000's output does not constitute the writing or recording of records, accounts, correspondence, or other work

product produced in "offices, shops, factories, workshops, schools, depots, hotels, and elsewhere." Neither the Subpart G headnotes, TSUS, nor the Brussels Nomenclature prescribe a size limit on the product of a data output device. *See generally* Subpart G Headnotes, Part 4, Schedule 6, TSUS (1987); Item 84.54, Chapter 84, Section XVI, Nomenclature for the Classification of Goods in Customs Tariffs (1968). Indeed, the Headnotes do contemplate large-scale equipment, as their definition of "office machines" includes devices which must be placed on the floor. Headnote 2(a), TSUS.

As the work product of the CES 3000 can conceivably serve as "correspondence, records, accounts, forms, * * * or * * * other 'office work,'" the writing heads are properly classifiable as "office machines."

### CONCLUSION

The court finds plaintiff has overcome the presumption of correctness that attaches to the classification by Customs, and that the imported writing heads for the CES 3000 are properly classifiable as "[p]arts of automatic data-processing machines and units thereof, other than parts incorporating a cathode ray tube," under Item 676.56, TSUS.