57 CCPA

**The UNITED STATES, Appellant,**

v.

**ANDREW FISHER CYCLE CO., Inc.,**
**Appellee.**

**No. 5351, C.A.D. 986.**

United States Court of Customs
and Patent Appeals.

June 4, 1970.

Rehearing Denied Sept. 10, 1970.

William D. Ruckelshaus, Asst. Atty. Gen., Andrew P. Vance, New York City, Chief, Customs Section, Herbert P. Larsen, New York City, Dept. of Justice, Civ. Div., Customs Section, for the United States; Lamb & Lerch, New York City, amici curiae, David A. Golden, New York City, of counsel.

Brooks & Brooks, New York City, attorneys of record, for appellee; Donald W. Paley, J. Joseph McDermott and Charles P. Deem, New York City, of counsel.

Before WORLEY, Chief Judge, RICH, BALDWIN, and LANE, Judges, and MATTHEWS, Senior Judge, United States District Court for the District of Columbia, sitting by designation.

RICH, Judge.

This appeal is from the judgment of the United States Customs Court, First Division, 62 Cust.Ct. 168, C.D. 3717, 295 F.Supp. 1115 (1969), sustaining the importer's protest to the classification of bicycle seats as "Other parts of bicycles" under item 732.36, Tariff Schedules of the United States (TSUS) and holding them properly classifiable as "saddles" under item 790.30 TSUS. The Government appeals and we reverse.

The imports are represented by two exhibits in evidence. One is a conventionally formed bicycle seat of modern construction made of a heavy, impregnated, canvas-like, woven material on a metal frame and covered with a two-colored artificial leather material. The other is one of the modern so-called "banana" saddles—long and narrow in construction, consisting of a metal frame, resin foam padding, and a plastic covering. There was no testimony. The parties stipulated that the "articles represented by Plaintiff's Exhibits 1 and 2 are known, bought and sold in the wholesale and retail bicycle trade of the United States, as saddles," "that such treatment existed at the time of passage of the Tariff Classification Act of 1962," and that the imported articles "are dedicated to use as seats for bicycles."

The involved statutory provisions are:
*Tariff Schedules of the United States:*
General Headnotes and Rules of Interpretation:

\* \* \* \* \* \* \* \*

10. *General Interpretative Rules.* For the purposes of these schedules—

\* \* \* \* \* \* \* \*

(ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a *specific provision for such part*. [Our emphasis.]

\* \* \* \* \* \* \* \*

Schedule 7, Part 5, Subpart C:
Parts of bicycles:

\* \* \* \* \* \* \* \*

732.36  Other parts of bicycles ................30% ad val.

\* \* \* \* \* \* \* \*

Schedule 7, Part 13, Subpart A:

\* \* \* \* \* \* \* \*

790.30  Harness, saddles, and saddlery, and parts thereof  ..........................12.5%  ad  val.

---

The merchandise was classified as parts of bicycles and the lower court held that the imported seats are "unquestionably 'parts' of bicycles." It also held that the provision for "saddles" in item 790.30 "is a specific *eo nomine* provision for bicycle seats" because of the stipulation that such seats are known, bought, and sold in the trade as "saddles." Under these circumstances, the court evidently felt compelled by general interpretative rule 10(ij) to hold the imports properly classifiable under item 790.30, as saddles, because "saddles" is a "specific provision" over which the "parts" provision "does not prevail."

The Government challenges this reasoning and is supported in its effort by a brief amicus filed on behalf of the domestic manufacturers of bicycle seats. The gist of the combined contentions, argued on various grounds, is that when the statute is *properly* construed the provision for "saddles" is *not* a specific provision for bicycle seats and rule 10(ij) has no applicability here. This is because "saddles" must be read as meaning saddles for use on horses or other domesticated animals, the contention being that various circumstances, hereinafter discussed, indicate this to have been the intent of Congress.

Bicycle seats have long been classified as parts of bicycles, notwithstanding they have also been known as "saddles" from the earliest times, and notwithstanding provisions in tariff acts since 1897 for "Harness, saddles, and saddlery," the same wording as now, or the same articles stated separately, with greater specificity, i. e., various categories of "harness," "saddles," and "saddlery."

Mead Cycle Co. v. United States, 51 Treas.Dec. 1118, Abst. 2231 (1927) involved paragraph 1606, Tariff Act of 1922, which provided for free entry of certain "harness, saddles, and saddlery" n. s. p. f. and a claim that bicycle saddles should be classified thereunder. The opinion of the court on that issue, as quoted in the opinion below from the original record, was:

There is nothing in the record to show that the saddles in question con-

sist of harness or saddlery as claimed, or that they are not merely parts of bicycles.

The claim under paragraph 1606 was therefore overruled.

Classification of bicycle seats as parts of bicycles, as against competing tariff act classifications other than the "Harness, saddles, and saddlery" provision, was sustained in F. F. Rick & Co. v. United States, 24 Treas.Dec. 1139, Abst. 32881 (1913) and American Thermo-Ware Co. v. United States, 29 Treas.Dec. 21, Abst. 38014 (1915). Government counsel state that they have been unable to find any case or administrative ruling in which bicycle saddles have ever been held to be anything other than parts of bicycles prior to the decision below herein. Appellee has cited no such case or ruling. On the contrary, for what it may be worth, appellant cites a directive by the Bureau of Customs, T.D. 54316, under date of Feb. 28, 1957, defining "Bicycles, complete without accessories," in which "The saddle or seat and seat post" is listed as one of the many components of such a "complete" bicycle.

While the foregoing precedents may be meager, it cannot be gainsaid that prior to the enactment of the TSUS it was the practice to classify bicycle saddles as parts of bicycles, and the one reported protest that they belonged in the "Harness, saddles, and saddlery" class was overruled.

The rationale of the importer adopted by the court below was that rule 10(ij) works a change in the long-standing classification of bicycle seats as "parts" yet when we examine the Tariff Classification Study, Explanatory Notes for Schedule 7, Part 5, Subpart C, we find the very positive statement, page 277: ·

Parts of bicycles are covered by the 4 items[1] 732.30 through 732.36 *at existing rates of duty*. [Emphasis ours.]

The sustaining of the importer's protest flies in the face of this statement in that it reduces the duty from 30% ad val. to 12.5% ad val., which, of course, is the reason for the protest. The lower court makes no mention of the above-quoted statement of intent.

The Tariff Classification Study Submitting Report of Nov. 15, 1960, contains illuminating information on the meaning of rule 10(ij), which is clearly the controlling provision in the view of the lower court. The first paragraph of the Report, p. 1, points out that the principal objectives of the Tariff Classification Study were to establish *logical* classifications in the light of changes in commerce since 1930, to *eliminate* anomalies and illogical results in classification, and to *simplify* the determination of classification. One of the ways this was done, as reported under a paragraph entitled "*4. The similitude provision and other 'basket' provisions*," p. 15, was to create "many new classes, the provisions for which have been assimilated in the appropriate parts and subparts of the schedules." While a "parts" provision is not exactly a "basket" provision, there is an analogy in that it necessarily includes a number of unnamed parts. On p. 19 the Report contains the following specific discussion of rule 10(ij):

General headnote 10(ij) specifies that a provision for parts of an article covers a product solely or chiefly used as a part of such article but does not prevail over a *specific* provision for such part. At the present time, much uncertainty exists in connection with the tariff treatment of parts of articles. In some instances, a mere provision for "parts" prevails over much more specific descriptions in the tariff schedules. Even certain "universal" components such as nuts, bolts, screws, and so forth, are sometimes classified as parts of a particular article according to their type and specific

---

1. The first three items, 732.30, 732.32, and 732.34 specify bicycle frames in three different value categories and the fourth

item is the one involved here, covering all other parts.

uses. *In the proposed schedules, specific provision is made for the more usual components of articles.* Under the rule expressed in headnote 10(ij), *these* specific provisions will prevail over a mere provision for "parts" of a particular article. [Emphasis ours.]

It is pointed out (p. 22) that in the proposed new schedules there are approximately 5,250 rate descriptions separately identified by five-digit numbers (such as 732.36 and 790.30) compared with about 3,250 in the previous structure. It is noted that the "saddles" provision was not a new provision. As above stated, it had long been in the statutes. In connection with the five-digit system, there is also a description in the Report of a new system tied thereto for gathering statistical data. It is thus explained on page 23:

> It is expected that the five-digit item numbers in the proposed schedules will form the basis for the collection of import statistics, and will, in the main, furnish most of the statistical detail required. However, any additional statistical refinements which may be desired can be developed in connection therewith vertically under each of the respective items involved by the addition of two more digits on the right-hand side of the decimal point. Under this system, customs officers classifying imports for rate purposes would be classifying them simultaneously for statistical purposes.

Under item 732.36 TSUS, "other parts of bicycles," in the Tariff Schedules of the United States Annotated (1963), a Tariff Commission publication, made contemporaneously with the enactment of TSUS, we find that there is a statistical reporting number, 732.3650, for bicycle "Saddles." Appellee admits that this was an interpretation of the term "saddles," which occurs in item 790.30, by the Tariff Commission which excludes bicycle saddles but argues that it has "no legal force or effect whatsoever." It says that only the judiciary has authority to interpret the meaning of

"saddles." While this may be true, it does not mean that we, the judiciary, are excluded from consideration of what the Tariff Commission thought when it was preparing the Tariff Schedules and what it clearly indicated about what it thought. The expressed intent of the drafters of the legislation is of great significance in determining the intent of the legislature that enacted it and to that extent it is not without "legal" effect.

To sum up our view, we think there are strong and sufficient indications that it was the intent of Congress, in enacting the TSUS, not to have bicycle seats or "saddles" classified otherwise than as "parts of bicycles," as they had long been classified, or to change the duty thereon, either by application of rule 10(ij) or otherwise.

We do not find in rule 10(ij) the compulsory effect apparently found by the Customs Court. In the first place, no new specific provision was made by the addition of a classification directed to bicycle seats, which would prevail over the "parts" provision in accordance with the scheme of the TSUS. In the second place, we are not as convinced as was the Customs Court that item 790.30 for "Harness, saddles, and saddlery" is a "specific provision" for bicycle seats, even though they are commonly or commercially known as "saddles." Certainly it is not a provision *specific* to bicycle seats; it is a generic provision for "saddles." Query: was it ever a provision for saddles of all kinds? Reference to any unabridged dictionary will demonstrate that "saddle" is a noun of great inclusiveness. The brief for amicus asks whether a saddle of lamb is included; this is not so far-fetched as it might seem when we observe that there are saddles on roofs and poles, in machinery, and on floors between the jambs of doorways. "Saddle" may be *"eo nomine"* but it is far from "specific" and that is the term used in rule 10(ij). It is not at all unusual to hold that a tariff term does not include everything literally

within the term,[2] especially under the circumstances in which "saddles" appears in item 790.30, flanked by "harness" on the one side and "saddlery" on the other. The rule of *noscitur a sociis* is urged on us, and appropriately so. The amicus brief has helpfully traced the provision for saddles back through all the tariff acts since the first in 1789 and has referred to various Summaries of Tariff Information. It would unduly prolong this opinion to review the provision here. We merely state our agreement with the conclusion that the term has always referred to saddles for horses and the like. Appellee has failed to show that it has ever referred to any other kind of saddle, including bicycle seats, except by the ruling of the Customs Court here appealed.

On the whole record here, we are constrained to disagree with the lower court's conclusion that "saddles" in item 790.30 TSUS is, in its words, "a specific *eo nomine* provision for bicycle seats." We therefore disagree with its conclusion based thereon that rule 10(ij) requires that the provision for "saddles" must prevail over the provision for "parts."

The judgment below is reversed.

Reversed.

2. In C. J. Tower & Sons v. United States, 44 CCPA 41, C.A.D. 634 (1957), we held that fresh green corn-on-the-cob was not to be classified as "corn" under paragraph 724, Tariff Act of 1930, but as vegetables in their natural state under paragraph 774, affirming the lower court. We rejected the argument that "all corn is corn." Appellant cites additional cases as follows: Miller Harness Co. v. United States, 59 Cust.Ct. 1, C.D. 3053 (1967), curry combs are not "combs"; Ross Products, Inc. v. United States, 46 Cust. Ct. 8, C.D. 2226 (1961), egg cups are not "cups"; and Davar Products, Inc. v. United States, 63 Cust.Ct. ——, C.D. 3880, 303 F.Supp. 1058 (1969), not all dishes used for serving are "serving dishes."