59 CCPA

**ACETO CHEMICAL CO., INC.,**
**Appellant,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5431.**

United States Court of Customs and Patent Appeals.

Sept. 21, 1972.

Serko & Sklaroff, New York City, attorneys of record, for appellant, Murray Sklaroff, New York City, of counsel.

L. Patrick Gray, III, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Joseph I. Liebman, New York City, for the United States.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges.

LANE, Judge.

This appeal is from the decision and judgment of the Customs Court, 65 Cust.Ct. 135, C.D. 4066 (1970), rendered on a rehearing of the case for all purposes including the taking of further testimony,[1] overruling appellant's protest of the customs collector's classification of the imported chemical material invoiced as "Empicol TSL" (hereinafter Empicol). The material was classified as a triethanolamine salt and assessed with duty at the rate of 3 cents per pound plus 15 per centum ad valorem, and appellant claimed the correct classification to be either as a cleaning liquid not specially provided for, dutiable at the rate of 6 per centum ad valorem, or as a preparation used as an application to the hair, dutiable at the rate of 18 and ¾ per centum ad valorem. The Customs Court held that neither of appellant's alternative claimed provisions comprehend the involved merchandise and thus upheld the collector's classification. Our review of the record and arguments convinces us that the court below erred, and we reverse the judgment of the Customs Court.

## THE RECORD

At the first trial, three witnesses testified. Mann, a chemical engineer and president of the importer corporation, and Kalish, a chemist with extensive experience in the cosmetic field, were called by appellant, while Lada, a director of a chemical manufacturing company and a former research chemist for the Food and Drug Administration, was called by appellee. Both Lada and Kalish hold doctoral degrees in chemistry, while Mann has a master's degree in chemistry having done his undergraduate work in chemical engineering.

---

1. The original decision is reported at 59 Cust.Ct. 15, 271 F.Supp. 293, C.D. 3058 (1967).

During Mann's testimony, a sample of the imported Empicol was introduced in evidence, and he stated its composition to be:

| | | |
|---|---|---|
| 36% | ............ | triethanolamine lauryl sulfate |
| 3.6% | ............ | lauric isopropanolamide |
| 1% | ............ | neutral fatty compound |
| 1% | ............ | triethanolamine sulfate |
| 58.4% | ............ | water |

It is a clear, odorless liquid which, according to Mann, was imported for use as a shampoo. Mann explained that the English manufacturer suggested the formula "which was identical with a shampoo formula [it was] supplying to the English affiliate of our ultimate customer * * *." He stated that it was sold in bulk to appellant's customer as a shampoo, and while the customer's representative told him that the mixture was being bottled as a shampoo, Mann had never seen it so bottled and did not know whether or not any additional ingredients were being included in the final product by the customer.

Both Kalish and Mann testified as to the nature and properties of the ingredients in the mix. The triethanolamine lauryl sulfate is a detergent which removes "oils, greases, and grime from the hair." This particular triethanolamine salt exhibits a less drastic cleansing action than the sulfonates used in heavy duty cleaners such as would be suitable for laundry and kitchen cleaning. However, it is important not to remove all grease from the hair, and to impart manageability after shampooing, a conditioner, in this case the neutral fatty compound, is added. The lauric isopropanolamide is a foam booster or stabilizer which insures a good lather. Finally, triethanolamine sulfate is added to increase the viscosity of the composition, hence decrease its fluidity, to make it appear thick and rich.

Kalish testified that a suitable detergent, a conditioner, and a foam booster are the three essential ingredients in a shampoo. Although he was unfamiliar with Empicol per se, when Kalish was shown the formula, he immediately concluded that it was a shampoo. He stated:

> This would be my first reaction to it, no matter where I saw it. This would be the sort of preparation I would tend to make for anybody who asked me for a shampoo.
>
> * * * * * *
>
> [The moderate detergent, conditioner and foam booster] are * * * the triple essentials of a shampoo, and if these triple essentials are there, why then the material is primarily shampoo * * *. Other things can be added, but they are supplementary, they are subsidiary. Oh, they extend the use of the shampoo, perhaps, but they are not the vital necessities that these ingredients are.
>
> Q. Then, in your opinion, the formula * * * is a shampoo, as it stands? A. No question about it.
>
> * * * I have formulated shampoos that have been very little if at all different from this.

When asked on cross-examination whether it is customary to add other ingredients than those specified in the formula for Empicol, Kalish indicated that while coloring and perfume are frequently added to the basic ingredients, there are colorless, odorless shampoos on the market. It is "by no means essential," to include these further additives. Lada, however, testified that he did not regard Empicol as it stands to be suitable as a shampoo. While he agreed that it would be useful as a base for a shampoo, it was his view that the concentration of the detergent, triethanolamine lauryl sulfate, was too high and would be irritating to the eyes, that the concentration of lauric isopropanolamide, the foam booster, was generally lower than that normally used, and that perfume would have to be added. Lada believed that modifications would have to be made to bring a marketable shampoo in line with the nationally advertised and sold commercial shampoos.

Both Kalish and Lada intimated that the composition would be suitable in

cleaning uses other than shampooing, but Kalish believed that the cost would be too high for the product to be competitive in any capacity other than as a shampoo.

When the case was reheard, appellant called Pacifico, a management consultant in the chemical industry with a chemical engineering background who had previously been a manager with a company that manufactured, among other things, detergents. He testified that Empicol was a cleaning liquid and could be used as a rug cleaner in addition to a shampoo. While the mixture of ingredients would be that found in a shampoo, he admitted that the concentration of the active detergent was unusually high and that normally this formulation would be diluted and modified by the addition of a coloring agent and perfume.

## STATUTORY PROVISIONS

The merchandise was classified under paragraph 2 of the Tariff Act of 1930, as modified, as a triethanolamine salt with compound duty at the rate of 3 cents per pound and 15 per centum ad valorem. The Government concedes this to have been erroneous and asserts that the correct classification would have been under the same paragraph as a mixture in chief value of a triethanolamine salt which carries the same rate of duty. However, appellee also concedes that the record is devoid of evidence which would have permitted a determination that the mixture was in chief value of triethanolamine salt.

Appellant pressed alternative claims below. Its preferred classification is under Paragraph 13 of the 1930 Act, as modified, which provides as follows:

> Blackings, powders, liquids, and creams for cleaning or polishing, not especially provided for, and not containing alcohol .........................6% ad val.

If not classifiable under paragraph 13, appellant claims Empicol is properly classified under paragraph 61 of the Act, as modified, which provides in relevant part as follows:

> \* \* \* all preparations used as applications to the hair, mouth, teeth, or skin, such as cosmetics, dentifrices, tooth soaps, pastes, theatrical grease paints, pomades, powders, and other toilet preparations, all the foregoing:
>
> \* \* \* \* \* \*
>
> Not containing alcohol ...........18¾% ad val.

Inasmuch as the Government has conceded the inapplicability of the provision under which the importation was classified, the sole question before us is which, if any, of appellant's claimed classifications is correct.

## THE CUSTOMS COURT

In a first decision, the majority of a divided three-judge Customs Court concluded that the importation was provided for under paragraph 13 as a liquid cleaning agent. Paragraph 13 was regarded as relatively more specific than paragraph 61. Judge Oliver dissented. His position was that to be properly classified under either claimed paragraph, the involved mixture would have to have been suitable for use as a cleaner or shampoo in the imported state. Finding that to be useful as a shampoo the basic composition would have to be modified by dilution with water and addition of a coloring agent and perfume, Judge Oliver concluded that Empicol as imported was neither a liquid cleaner nor a shampoo.

On petition by the Government, the Customs Court granted a rehearing for all purposes. In its decision and judgment thereafter, and the one from which this appeal was taken, the court was unanimous in holding that neither paragraph 13 nor paragraph 61 described the imported material. Referring to legislative history concerning these claimed provisions, the court said:

> The Tariff Information Surveys, prepared in 1921 by the United States Tariff Commission for the use of the Committee on Ways and Means of the House of Representatives in the preparation of a new tariff bill, reveal in

a discussion of the existing paragraph 11 (the predecessor of paragraph 13 herein) that "to come within paragraph 11, the cream preparation, or powder must have been prepared or imported for cleaning or polishing in the condition in which it is imported." In addition, it further appears from the study of the legislative history of this provision, that Congress intended to provide in paragraph 13 for such cleaners as were used basically for household cleaning and not for personal hygiene. Consequently, the instant importation, not being a completed product and being intended for use as a hair shampoo, is clearly not encompassed by paragraph 13.

As regards paragraph 61, we now note that the Summaries of Tariff Information for 1921 and 1929 indicate that the relevant provision was intended to cover perfumery and cosmetics *in finished form.* These articles, of course, include washes for the care of the hair.

In light of the unfinished state of the importation, we reach the conclusion that it is not properly classifiable pursuant to paragraph 61 of the Tariff Act of 1930, as modified. [Footnotes omitted.]

## OPINION

Appellant contends that the statutory provisions are clear on their face, and no resort to legislative history is necessary. It is asserted that the claimed paragraphs say nothing about finished or completed state, but in any event, it has long been held that "if the basic elements which dedicate a product to its end use are present, then the article is, in fact, a finished product for that end use." Under this theory, appellant urges that Empicol is classifiable under either claimed provision. As to the personal hygiene exclusion found by the court below with respect to paragraph 13, appellant thinks that resort to legislative history is not appropriate in this case but that even if the legislative history is properly considered it fails to re-

veal the exclusion found by the court. Finally, appellant regards paragraph 13 as providing more specifically than paragraph 61 for Empicol.

Appellee agrees with the reasoning of the Customs Court. The Government stresses that if the material as imported were suitable for use as a shampoo, it would be classifiable under paragraph 61, but that since it is not finished as imported, neither paragraph 61 nor paragraph 13 applies.

### I. *Is Either Claimed Provision Apposite?*

It is axiomatic that classification must be based on the goods in the condition in which they are imported. See, e. g., United States v. P. John Hanrahan, Inc., 45 CCPA 120, 124, C.A.D. 684 (1958). Resort to the legislative history of paragraphs 13 and 61 is not necessary to ascertain that that doctrine applies as well to these provisions. However, in assessing whether an importation is described by a given tariff provision, consideration of the suitability of the product as imported for the use defined in the provision must be tempered with reason and logic.

In the present case, the question common to classification under either of appellant's claimed paragraphs is whether in the imported condition Empicol is suitable for use as a shampoo. As we have indicated, the court below concluded it was not since water, perfume and coloring had to be added, in the court's opinion, before a shampoo could be marketed. Phrased differently, therefore, the common issue is whether dilution with water and addition of such agents as perfumes and coloring agents are modifications of such a quality that it may be said that Empicol is a mere base for a shampoo rather than a completed shampoo.

A similar issue arose in the past with respect to imported drugs. In United States v. Hillier's Son Co., 14 Ct.Cust. App. 216 (1926), the predecessor of this court held scammony resin to be classifiable as a medicinal preparation rather

than a resin even though fillers and carriers were usually added to convert the drug into an administrable powder or solution. The court recognized that the addition of inert material was not a chemical change, and it was not necessary "to compound it with other medicinal properties in order to make it useful as a medicine." 14 Ct.Cust.App. at 219. This distinguished the case from United States v. Martin, 155 F. 264 (C.C.D. Mass.1907), in which scammony resin was held not to be a medicinal preparation but rather a drug advanced in value, since in *Martin,* the evidence of record showed that other *drugs* had to be added before the resin could be used medicinally. Similarly, in McKesson & Robbins v. United States, 3 Ct.Cust.App. 515 (1913), the court held menthol to be a medicinal preparation rather than a drug notwithstanding the fact that carriers or water had to be added in order to obtain an ingestible powder or solution. Again, the court appreciated that such a modification was not a chemical change and did not alter the medicinal function of the menthol.

In both *Hillier's Son Co.* and *McKessons & Robbins,* the court was faced with the contention that the particular substance was not a medicinal preparation as imported but a mere base for a medicinal preparation. As we see it, that contention was twice rejected because the ingredients added were not active agents related to the pharmacological value of the imported goods, but were instead inert, albeit mandatory, additives.

 We find a comparable situation in the present case. The evidence adduced at trial satisfies us that the imported liquid is a mixture of the essential elements which impart the functions of a shampoo, and that one having expertise in cosmetic chemistry would recognize the formulation as a shampoo. The water is not an active ingredient. It changes the concentration of the detergent, probably lowers the cost, and may facilitate application of the sham-

poo by the consumer, but these are the same results which were achieved by the addition of water to scammony resin and menthol. We therefore conclude that even if dilution prior to bottling is a mandatory step, Empicol is nevertheless a completed shampoo for tariff purposes in the condition in which it was imported. The evidence of record shows that perfume and coloring agents are purely optional additives which have no effect on the suitability of the product as a shampoo, and their absence from the liquid as imported does not alter our conclusion.

Since Empicol is a shampoo, i. e., a hair preparation, it is properly classifiable under paragraph 61. This leaves for resolution appellant's claim that it is also classifiable under paragraph 13 as a liquid cleaning material and, in fact, more specifically provided for thereunder.

## II. *Does Paragraph 13 Exclude Personal Hygiene Products?*

 The Customs Court found that the legislative history of paragraph 13 reflected a Congressional intent to exclude personal hygiene products from its purview. It is true that the cardinal rule of statutory interpretation is to give effect to the intent of the legislature. United States v. Simon Saw & Steel Co., 51 CCPA 33, 40, C.A.D. 834 (1964); United Metal Goods Mfg. Co. v. United States, 46 CCPA 120, 122, C.A.D. 712 (1959). The "first and most obvious" method of ascertaining Congressional intent is to examine the statute itself, Simon Saw & Steel, 51 CCPA at 40. See also United States v. Border Brokerage Co., 48 CCPA 10, 13, C.A.D. 754 (1960); A. W. Fenton Co. v. United States, 55 CCPA 54, 58, C.A.D. 933 (1968). Where the language of the tariff provision in issue is free of ambiguity, resort to extrinsic aids of construction, such as legislative history as an indicia of legislative intent, is unwarranted. J. E. Bernard & Co. v. United States, 57 CCPA 52, 58, 420 F.2d 1403, 1407, C.A.D. 975 (1970); Air Express

International Agency, Inc. v. United States, 53 CCPA 11, 14, C.A.D. 869 (1966).

■ In the present case, the court below did not identify any point of ambiguity in paragraph 13, and while the language is broad, it is not, in our opinion, ambiguous. There is nothing CA 5431 in the paragraph which would suggest that liquids for cleansing parts of the body are beyond the scope of the provision except to the extent that a given liquid is provided for specifically elsewhere. We conclude that a liquid shampoo, which is a hair cleaner, is, unless more specifically provided for elsewhere, comprehended by paragraph 13 of the 1930 Tariff Act.

■ The position of the Government is expressed in its brief as follows:

Appellant contends * * * that the resort to legislative history was improper as the statute is not ambiguous. This Court laid such a contention to rest in the case of United States v. Durst Mfg. Co., Inc., 46 CCPA 74, C.A.D. 700 (1959), wherein it stated that resort to legislative history is proper when the Court determines that an ambiguity exists from scrutiny of the terms. Since the lower court, in the case at bar, stated that it had to engage in a "[c]lose study of these provisions and their legislative history," there can be no question that after the Court examined the language an ambiguity was found to exist, warranting the resort to legislative history.

For one thing, the Customs Court did not say it *had* to engage in a study of the legislative history, only that a "close" study revealed, inter alia, that paragraph 13 was not intended to cover personal hygiene products. In any event, with due deference to the Customs Court, we cannot accept appellee's implicit proposition that an inquiry by the Customs Court into legislative history is a conclusive finding of ambiguity. In *Durst*, cited by appellee, this court found ambiguities on the face of the tariff provision and explained wherein they resided. Just as any other conclusion of law, the holding of ambiguity in the statute must have a reasonable basis in fact. Were we to approve of the Government position, we would effectively preclude appellate review of a significant conclusion of law by the Customs Court to the clear prejudice of an appellant. This is inconsistent with the statutory responsibility of this court and the general function of appellate review.

### III. *Which Provision is Relatively More Specific?*

■ Having decided that the imported material is properly classified under both paragraph 13 and paragraph 61, we are faced with the final question of which of the two most specifically provides for the importations. We are of the opinion that "cleaning liquid," rather than "preparation for the hair," describes Empicol "with the greatest degree of accuracy and certainty." Simon Saw & Steel Co., 51 CCPA at 41. Preparations for the hair may perform a wide variety of functions including cleaning, but also including straightening, setting, coloring, tint-removing, and so on. A cleaning liquid, however, involves essentially one function, and although there are many different types of cleansers and varied cleaning jobs that may be performed, common to all is cleaning. We regard a shampoo as primarily accomplishing a cleaning function. The evidence indicates the need for the inclusion of a conditioner in a shampoo mainly because the cleaning removes the grease and oil which contributes to manageability. A conditioner, although essential, is still an ingredient which is ancillary to the principal shampoo ingredient, the detergent, necessary for the primary function—cleaning. The imported Empicol, being a completed shampoo within the contemplation of the tariff law here involved, is a cleaning liquid and is most specifically provided for as such under paragraph 13 of the Tariff Act of 1930. Compare Unit-

ed States v. Ampex Corp., Cust.Ct., 460 F.2d 1086, decided June 1, 1972.

There is evidence of record, to which we earlier alluded, which suggests that Empicol has potential cleaning uses other than as a shampoo, and this would support our conclusion that it is best described as a cleaning liquid. However, we find the testimony in that regard equivocal and inconclusive, and our disposition of this case has not turned on other possible uses for Empicol.

For the reasons set forth, we hold that the Customs Court erred in not sustaining appellant's protest and claim that the imported liquid should have been classified under paragraph 13, as modified, and assessed with duty at the rate of 6 per centum ad valorem. The decision and judgment of the Customs Court is accordingly reversed.

Reversed.

BALDWIN, Judge (dissenting).

While I am in complete agreement with parts I and II of the majority opinion, I am convinced that paragraph 61 of the 1930 Act provides for the imported shampoo more specifically than does paragraph 13 of the 1930 Act. Paragraph 13 is merely a basket provision for non-alcoholic cleaning or polishing compositions not specially provided for elsewhere. Paragraph 61, on the other hand, covers all "preparations used as applications to the hair, mouth, teeth or skin." In my view that provision is more specific than a provision covering compositions for cleaning or polishing anything. See American Shipping Co. v. United States, 19 CCPA 304, T.D. 45470 (1932). My view is reinforced by the inclusion of "dentifrices" and "tooth soaps" in the exemplars listed under paragraph 61. Indeed, the legislative history of the predecessors of paragraph 61 which was specifically relied on by the court in *American Shipping* indicates that "hair *washes*" were intended to be covered by those predecessors. See 19 CCPA at 306–307. The pertinent language in paragraph 61 is identical to the language of its immediate predeces-

sor, paragraph 62 of the Tariff Act of 1922, which was the provision under consideration in *American Shipping*.

Accordingly, I would hold that the imported shampoo would be properly classified under paragraph 61 of the Tariff Act of 1930.