60 CCPA

**Wayne WITHROW and Conrac Division of Giannini Controls Corp., Appellants,**

**v.**

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5482.**

United States Court of Customs and Patent Appeals.

May 24, 1973.

Glad & Tuttle, Los Angeles, Cal., attorneys of record, for appellants. Robert Glenn White, Los Angeles, Cal., of counsel.

Harlington Wood, Jr., Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Gilbert Lee Sandler, New York City, for the United States.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

**1394**

BALDWIN, Judge.

This appeal is from the decision and judgment of the Customs Court[1] overruling appellants' protest against the classification of merchandise comprising certain television picture tube glass bulbs, imported in 1965, 1966 and 1967, under item 547.37, TSUS, as glass envelopes, without fittings, for vacuum tubes. Appellants claim classification either as parts of cathode ray tubes under item 687.50, TSUS, when imported prior to December 5, 1965, the effective date of the Tariff Schedules Technical Amendments Act of 1965, Section 2(a), (Pub.L. 89–241) or as parts of other electronic tubes, under item 687.60, TSUS, when imported after the effective date of that amendment.

The pertinent statutory provisions are:

The pertinent statutory provisions are:

*Classified under*:

Tariff Schedules of the United States: Schedule 5, Part 3, Subpart C:

Glass envelopes (including bulbs and tubes), without fittings, designed for electric lamps, vacuum tubes or other electrical devices:

  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Item 547.37   Other   ........... 25% ad val.

*Claimed under*:

Tariff Schedules of the United States: Schedule 6, Part 5:

Electronic tubes (except X–ray tubes); photocells; transistors and other related electronic crystal components; mounted piezo-electric crystals, all the foregoing and parts thereof:

Item 687.50   Cathode-ray tubes, and parts thereof ......... 12% ad val.

Tariff Schedules of the United States: Schedule 6, Part 5, as amended by the Tariff Schedules Technical Amendments Act of 1965, T.D. 56511:

Electronic tubes (except X–ray tubes); photocells; transistors and other related electronic crystal components; mounted piezo-electric crystals; all the foregoing and parts thereof:

Television picture tubes

  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Item 687.60   Other   ...........12½% ad val.

The merchandise consisted of funnel-shaped glass bulbs used to produce cathode-ray tubes used in the television industry. Fused in the funnel part was a button-sized piece of metal, known as an "anode button" and serving to permit passage of voltage into the cathode ray tube to supply an anode to be provided therein.

The sole issue is whether the imported bulbs were "without fittings" as required by the prefatory heading to Item 547.37.

Neither party has alleged that a commercial definition of "fittings" as used here either exists or controls. Nor is there any evidence in the legislative history of Item 547.37 of a particular meaning for the term. The common or dictionary meanings are relatively uninformative as evidenced by the following examples:

*fitting 1a*: something used in fitting up * * * b: a small often standardized part (as a coupling, valve, gauge) entering into the construction of a boiler, steam, water, or gas supply installation or other apparatus— usu. used in pl.; see GAS FITTING, PIPE FITTING * * *. [Webster's Third New International Dictionary (1961).].

*fitting* n. 1. The act of adjusting or connecting properly. 2. Any article of permanent equipment or adjustment: used generally in the plural, as including fixtures and apparatus; as, gas-*fittings*; steam-*fittings* * * *. [Funk and Wagnalls New Standard Dictionary (1965).].

Each party called one witness. Moreland, for appellant, was an official of the company who had wide experience with cathode ray tubes and their uses. Appellee's witness, Steierman, was manager of the television products division of Owens-Illinois, a large producer of cathode ray tube bulbs, and was thoroughly experienced in his field. Both substantially agreed that completing the

1. 67 Cust.Ct. 219, C.D. 4277 (1971).

imported envelopes into cathode ray tubes included cleaning out the bulb; applying a phosphor to the inner face of the tube; applying a coating of aluminum over the inside; putting a conductive coating from the button down through the neck of the tube; assembling the electron gun structure into the neck of the tube and sealing it; and evacuating it.

In response to questioning concerning the anode button and the term "fitting," Moreland testified:

Q. In the cathode ray tube industry is there anything on a cathode ray tube known as a fitting? A. There are on some tubes more than one thing. This is always called a fitting, this button. Sometimes the tubes have bases which are placed on them later and which is also considered a fitting.

Q. What do you consider a fitting to be in the electronic tube industry? A. A connecting means of some kind.

Q. What function does the button on Plaintiff's Exhibit 1 serve? A. It connects, serves as a means of making an electrical connection through the glass of high voltage which is generated external to the tube to get that inside the tube.

Q. Will you tell me, is the purpose of that connection for means of manufacturing or for means of use with a tube after it's completed? A. For the means of use of the tube after it's completed.

Q. Have you had any experience with glass envelopes for electronic tubes other [than] cathode ray tubes? A. No direct experience. I have visited many plants where these tubes of various types are made and observe them. I have not been actually myself engaged in the manufacture of tubes other than cathode ray tubes.

Q. One last question: in your knowledge, your personal knowledge and experience in the industry, is the button on Plaintiff's Exhibit 1 known as a fitting? A. Yes.

Steierman expressed the opinion that the anode button is not "a fitting on a glass bulb," giving as one reason that it is an "intrinsic portion" of the bulb itself. As examples of what he would consider fittings used in cathode ray tubes, the witness referred to a connector on the end of a wire for making contact with the outside of the button, "the kind of plastic cap which is frequently used to protect the lead of the electron gun" and a "glass panel cemented to the front surface to serve * * * the function of protection against implosion." He further testified that the anode button is not known "as a fitting in the glass envelope industry" and that "the term fitting is [not] used as a word of art in the glass envelope industry."

### The Customs Court

The Customs Court found the testimony of both witnesses to be "couched in such diffident tones of unfamiliarity with the term 'fittings' in the glass bulb and cathode-ray tube industries as to be of little weight." It further stated:

* * * Neither witness was able to identify, definitively or otherwise, the kinds of products that would or would not be considered fittings in the industry producing glass bulbs for cathode-ray tubes and in the industry producing cathode-ray tubes. Furthermore the testimony of the two witnesses is conflicting and, with respect to the term "fittings", the testimony of one witness has the effect of negativing the testimony of the other witness.

* * * * * *

* * * But something which is integral to production of an article which is a part of the whole (as is the anode metal button fused into the glass bulbs in this case designed for cathode-ray tubes), in our opinion, is not per se a fitting in the tariff sense. The principal parts of a cathode-ray vacuum tube are an electron gun, the bulb, and a luminescent screen. Without evidence or technical expertise,

we could not speculate as to whether those parts would be, as to each other, fittings. By the same token we cannot in the case at bar speculate that the metal button is or is not a fitting.

*Opinion*

We are not convinced that the Customs Court erred in finding that the record here did not rebut the presumptively correct classification of the merchandise by customs officials as glass envelopes "without fittings." In addition to the conflicting testimony referred to by the court, questioning of both witnesses failed to bring to light the existence of any commercial cathode ray tube bulbs that did not have anode buttons or their metallic equivalent, as a wire providing a similar function. Appellee points out that it is stated that item 547.37 covers "Glass envelopes for * * * television tubes" in Tariff Commission, Tariff Classification Study, (1960), Schedule 5, Part 3, p. 144. It also notes that both witnesses clearly accepted that cathode ray tubes are used as the principal tubes in television sets. Appellee's ultimate argument on this point is that exclusion of the present tube bulbs from item 547.-37 would mean that any commercial cathode ray tube bulb would be similarly excluded, a result it regards as inconsistent with the express intention of Congress.

This argument of appellee is not adequately answered by appellants. It is true that the record does not establish that the same conditions as regards commercial cathode ray tube bulbs necessarily existed in 1960 when the Classification Study, supra, was published as well as the later time when the testimony was given. However, the burden is on appellants to overcome the presumption that the classification was wrong and we agree with the Customs Court that it has not done so here.

The judgment of the Customs Court is affirmed.

Affirmed.