**AMERICAN RUSCH CORP.**

v.

**UNITED STATES.**

C.D. 4599;  Court Nos. 68/34080, etc.

United States Customs Court.
May 28, 1975.

Lane, Young & Fox, New York City (Peter Jay Baskin, New York City, of counsel) for plaintiff.

Rex E. Lee, Asst. Atty. Gen. (Gilbert Lee Sandler and David R. Ostheimer, New York City, trial attorneys), for defendant.

NEWMAN, Judge:

This action comprises six consolidated protests which raise the issue of the proper tariff classification of merchandise described on the entries and related papers as tracheotomy tubes, tracheotomy cuffs, Tracheoflex, nasopharyngeal tubes, and articles of similar descriptions. These articles were exported from West Germany during the years 1967 through 1969, and entered at the port of New York.

The regional commissioner classified the merchandise as "catheters" under item 709.09 of the Tariff Schedules of the United States (or under item 709.09, as modified by T.D. 68–9) and assessed duty at the rate of 12.5, 11, or 10 per centum ad valorem, depending upon the date of entry.

Defendant asserts as an affirmative defense that in the event the court determines that the imports were improperly classified as catheters under item 709.09, they are properly dutiable under item 709.27 (or under item 709.27, as modified by T.D. 68–9) at the rate of 36, 32, or 28.5 per centum ad valorem, depending upon the date of entry. [1]

Plaintiff claims that the imports are properly dutiable under the provision for various types of respiratory equipment in item 709.45 (or under item 709.-45, as modified by T.D. 68–9) at the rate of 10, 9, or 8 per centum ad valorem, depending upon the date of entry.

The protests are overruled.

---

[1]. Defendant has abandoned another affirmative defense that the nasopharyngeal tubes are properly dutiable under item 709.-06 as anesthetic apparatus.

STATUTE INVOLVED [2]

Schedule 7, Part 2, Subpart B, TSUS:

Medical, dental, surgical and veterinary instruments and apparatus (including electro-medical apparatus and ophthalmic instruments), and parts thereof:

            *    *    *    *    *    *

     Other:

            *    *    *    *    *    *

709.09     Bougies, catheters, drains, and sondes, and parts thereof ..... * * *

            *    *    *    *    *    *

     Other:

            *    *    *    *    *    *

709.27     Other .................... * * *

           *    *    *    *    *    *

709.45  Artificial respiration, ozone therapy, oxygen therapy, aerosol therapy or similar apparatus; breathing appliances, including gas masks and similar respirators; parts of the foregoing ....................... * * *

## THE RECORD

The record includes the oral testimony of two witnesses on behalf of plaintiff, and one witness on behalf of defendant; [3] additionally, each party introduced five exhibits in evidence.

The pertinent facts may be summarized:

The articles in issue are various medical devices which assist a patient's breathing. A brief description of how each article is utilized follows:

The tracheotomy tube is inserted into the trachea through an incision in the anterior aspect of the neck where there is an obstruction between the mouth and the trachea (which the tube can circumvent), or where a post-operative patient has difficulty in breathing. This tube also may be used in patients having certain respiratory diseases such as asthma or emphysema. The tracheotomy tube may be connected to a ventilating machine that assists or assumes the patient's respiratory function, or the tube may be used alone if the patient can maintain an adequate level of respiration by simply using the tube.

A Tracheoflex is a type of tracheotomy tube containing a metal spiral component to prevent compression and kinking.

A tracheotomy cuff serves to make an air-tight seal around the tube so that no air will escape during the ventilation of the patient.

Nasopharyngeal tubes (or airways) are inserted through the nose and into the pharynx. These tubes are not used with ventilating machines or other apparatus, but serve merely to establish an airway to overcome an obstruction.

## OPINION

### 1.

It is, of course, fundamental in classification cases that the protestant has the burden of establishing not only that the Government's classification was incorrect, but also of establishing the correctness of the classification asserted. Moreover, unless the plaintiff has established the propriety of its asserted classification, the protest must be overruled, and it is unnecessary to consider whether or not the Government's classification is wrong. See *United States* v. *National Starch Products, Inc.,* 50 CCPA 1, C.A.D. 809, 318 F.2d 737 (1962), *cert. denied,* 373 U.S. 923, 83 S. Ct. 1525, 10 L.Ed.2d 422 (1963), and cases cited therein; *United States* v. *New York Merchandise Co., Inc.,* 58 CCPA 53, C.A.D. 1004, 435 F.2d 1315 (1970).

Inasmuch as I have determined that plaintiff failed to establish the propriety of its claim under item 709.45, the protests are overruled without reaching the issue of whether the merchandise was properly classified by the regional commissioner as catheters under item 709.09.

2. Applicable rates of duty omitted as they depend upon the date of entry.

3. Plaintiff's witnesses were: Roland Petersen-Frey, vice president and general manager of American Rusch Corp.; and Dr. Maximilian Schapira, a specialist in anesthesia and respiratory therapy.

Defendant's witness was: David Sheridan, president of National Catheter Corporation.

### 2.

While it is beyond dispute that the imports were designed to aid a person's breathing, and hence are literally "breathing appliances", I nevertheless have concluded they are not within the intended scope of item 709.45. This conclusion is predicated upon a long line of appellate authorities, cited *infra*, applying rules of statutory construction which are equally applicable here.

▮▮▮ It is well settled that tariff provisions do not necessarily include everything that falls within their literal meaning, particularly where, demonstrably, there is contrary legislative intent. *General Methods Corporation* v. *United States*, 59 CCPA 109, C.A.D. 1049, 458 F.2d 521 (1972); *United States* v. *Andrew Fisher Cycle Co., Inc.*, 57 CCPA 102, C.A.D. 986, 426 F.2d 1308 (1970). And "[i]t is a familiar rule, that a thing may be within the letter of the statute and yet not within * * * its spirit, nor within the intention of its makers". *Church of the Holy Trinity* v. *United States*, 143 U.S. 457, 459, 12 S. Ct. 511, 512, 36 L.Ed. 226 (1892); *Barnebey-Cheney* v. *United States*, 61 CCPA 10, 14, C.A.D. 1110, 487 F.2d 553, 556 (1973); *United States* v. *Hammond Lead Products, Inc.*, 58 CCPA 129, 139, C.A.D. 1017, 440 F.2d 1024, 1031 (1971). Clearly, an *eo nomine* provision does not include all forms of the article *where there exists a contrary legislative intent*;[4] and "the common meaning of tariff terms as expressed in lexicographical authorities must yield to contrary legislative intent". *Heads and Threads* v. *United States*, 56 CCPA 95, 98, C.A. D. 960, 417 F.2d 637, 639 (1969).

▮▮▮ In *Harrison* v. *Northern Trust Co.*, 317 U.S. 476, 479, 63 S.Ct. 361, 363, 87 L.Ed. 407 (1943), the United States Supreme Court reversed the Court of Appeals for the Seventh Circuit, observing:

* * * The court below refused to examine the legislative history of § 807, on the ground that the section was unambiguous.

But words are inexact tools at best, and for that reason there is wisely no rule of law forbidding resort to explanatory legislative history *no matter how "clear the words may appear on 'superficial examination.'"* * * * [Emphasis added.]

See also: *Tidewater Oil Co.* v. *United States*, 409 U.S. 151, 157, 93 S.Ct. 408, 34 L.Ed.2d 375 (1972); and recently, *Cass* v. *United States*, 417 U.S. 72, 77–79, 94 S.Ct. 2167, 40 L.Ed.2d 668 (1974).

### 3.

In determining the legislative intent of item 709.45, plaintiff relies heavily upon the *Tariff Classification Study Explanatory and Background Materials* (1960), which is aptly described in plaintiff's brief "as one of the best reference sources for determining the legislative intent in connection with the Tariff Schedules of the United States". The study was submitted to Congress prior to the effective date of the TSUS, and has been frequently consulted by the Courts as an authoritative source for determining legislative intent. See e. g.: *Certified Blood Donor Services, Inc.* v. *United States*, 62 CCPA ——, C.A.D. 1147, 511 F.2d 572 (1975); *Kurt S. Adler, Inc.* v. *United States*, 61 CCPA 68, C.A.D. 1122, 496 F.2d 1220 (1974); *Albert E. Price, Inc.* v. *United States*, 60 CCPA 127, C.A.D. 1095, 476 F.2d 1354 (1973); *Wayne Withrow Conrac Divi-*

---

4. The rule has been stated thusly: "* * * an *eo nomine* statutory designation of an article, without limitation *or contrary legislative intent*, judicial decision, or administrative practice, includes all forms of the article". (Emphasis added.) See *Nomura (America) Corp.* v. *United States*, 58 CCPA 82, 85, C.A.D. 1007, 435 F.2d 1319, 1321 (1971), and cases cited.

sion v. *United States*, 60 CCPA 144, C.A.D. 1101, 477 F.2d 1393 (1973); *United States* v. *Cavalier Shipping Co., Inc.*, 60 CCPA 152 C.A.D. 1103, 478 F.2d 1256 (1973); *United States* v. *Precise Imports Corp.*, 59 CCPA 113, C.A.D. 1050, 458 F.2d 1376 (1972); *United States* v. *Pharmacia Fine Chemicals, Inc.*, 59 CCPA 196, C.A.D. 1066, 463 F.2d 1370 (1972); *United States* v. *Andrew Fisher Cycle Co., Inc.*, 57 CCPA 102, C.A.D. 986, 426 F.2d 1308 (1970); *Rifkin Textiles Corp.* v. *United States*, 54 CCPA 138, C.A.D. 925 (1967), *cert. denied*, 389 U.S. 931, 88 S.Ct. 294, 19 L.Ed.2d 283 (1967).

With reference to item 709.45, the *Tariff Classification Study* significantly discloses (schedule 7, part 2, page 146):

> Item 709.45 provides for apparatus used for artificial respiration, breathing aids of various types, and associated appliances. *These articles are currently dutiable under paragraph 353 or 372 at the rate of 13.75 or 11.5 percent ad valorem, respectively, depending on the essentiality of any electrical feature which may be incorporated in the apparatus or appliance.* These conflicting provisions have been combined into one item at a rate (12.5 percent ad valorem) which approximates the average of existing rates. [Emphasis added.]

Plaintiff argues that the *Tariff Classification Study* "gives absolutely no indication that articles such as those involved herein were intended to be excluded from classification under Item 709.45, *supra*"; and that "especially the words 'various types, and associated appliances' forces one to conclude that Congress intended the provision to include a very wide range of breathing aids".

On the other hand, plaintiff overlooks —and defendant correctly contends— that the *Tariff Classification Study* indicates Congress intended item 709.45 should cover mechanical or machine-like apparatus which was dutiable under either paragraph 353 or paragraph 372, depending upon the presence of an essential electrical feature. Moreover, as pointed out by defendant, the study states that "various" breathing aids are covered by item 709.45, and does not state that "*all*" such aids are covered. The legislative history of item 709.45, seen in the passage quoted above from the *Tariff Classification Study*, is dispositive of the issue. *Cf.* our appellate court's very recent holding in *Certified Blood Donor Services, Inc., supra* (the *Tariff Classification Study* was held dispositive of the intended scope of item 437.76); *Astra Trading Corp.* v. *United States*, 65 Cust.Ct. 6, C.D. 4044 (1970).

■ In *United States, etc.* v. *Simon Saw & Steel Co.*, 51 CCPA 33, 40, C.A.D. 834 (1964), our appellate court commented:

> It is well established that the basic rule of construction applicable to any case involving the construction of a statute is that the intent of the Congress is to be given effect. Thus, for example, this court has said in *United States* v. *Clay Adams Co., Inc.*, 20 CCPA 285, 288, T.D. 46078:

> * * * All rules of construction must yield if the legislative intent is shown to be counter to the apparent intent indicated by such rules. *The master rule in the construction of statutes is to so interpret them as to carry out the legislative intent.* * * * [Emphasis added by CCPA.]

■ In summary, although the tracheotomy and nasopharyngeal tubes and other devices herein are literally "breathing appliances", nevertheless they are not within the intended scope of item 709.45, inasmuch as the *Tariff Classification Study* clearly indicates that the framers of the provision intended that such provision covers "articles * * * currently dutiable under paragraph 353 or 372 * * * depending

on the essentiality of any electrical feature which may be incorporated in the apparatus or appliance". Based on the exhibits and testimony of record, it is readily apparent that the imports are not encompassed by paragraph 353 or paragraph 372.

4.

While the language in item 709.45 "including gas masks and similar respirators" was obviously intended to extend the scope of the provision,[5] the record however fails to establish that the articles in question are similar to gas masks, as urged by plaintiff.

For the foregoing reasons, plaintiff has failed to sustain its claim under item 709.45 and the protests are overruled. Judgment will be entered accordingly.

5. *Cf. United States* v. *Ampex Corp. et al.*, 59 CCPA 134, C.A.D. 1054, 460 F.2d 1086 (1972).