BERNS & KOPPSTEIN, PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 86–09–01180

(Decided March 13, 1989)

*Fitch, King & Caffentzis* (*Richard C. King*) for plaintiff.

*John R. Bolton,* Assistant Attorney General, *Joseph I. Liebman,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Barbara M. Epstein*); *Theodore Y. Chong,* General Attorney, United States Customs Service (of counsel); for defendant.

DICARLO, *Judge:* Berns & Koppstein (the "importer") and the government each move for summary judgment under Rule 56 of the Rules of this Court to establish the proper tariff classification of niger seed imported from Ethiopia and used in the United States as bird seed. The Court has jurisdiction under 28 U.S.C. § 1581(a) (1982).

Niger seed is an oil-bearing seed. The issue before the Court is whether this oil-bearing seed is properly classifiable as "Oil-bearing nuts and seeds, not specially provided for" under item 175.57 of the Tariff Schedules of the United States (TSUS). Instead of looking to the plain words of this tariff provision, the government argues that a clear legislative intention supports the decision of the United States Customs Service (Customs) to follow earlier court decisions and classify the imported seed under item 127.10, TSUS, as "Garden and field seeds, not specially provided for" with duty at the rate of 1.5 cents per pound.

The Court finds that the earlier cases are no longer controlling because of amendments to the tariff statutes, and that there is no clear contrary legislative history to justify departure from a plain reading of the tariff provisions to classify the oil-bearing seeds as "Oil-bearing nuts and seeds, not specially provided for."

BACKGROUND

Niger seed has been defined as "the seed of ramtil that yields a valuable oil." *Webster's Third New International Dictionary* 1527 (1981). The seed has been more specifically described as an oil-bearing seed

> produced principally in India and Pakistan, and reportedly to some extent in the West Indies. In India and Pakistan the seed is crushed for the oil, which is used in cooking, for anointing the body, and for adulterating sesame and other higher priced oils. In the United States the imported seed, which comes from India and Pakistan, is used exclusively in feed mixtures for birds.

7 *Summaries of Tariff Information* 182 (1948).

The parties agree that (1) the imported merchandise is niger seed, (2) niger seed is an oil-bearing seed, (3) since at least 1960, niger seeds have been used in the United States as bird feed or an ingredient of bird feed, and that (4) the seed's germination level is 75% or above. The parties also stipulate that the imported seed meets the requirements of TSUS headnote 1, schedule 1, part 6, subpart B, because the niger seed does not consist of "seeds unfit for seeding purposes within the meaning of the Federal Seed Act," 7 U.S.C. § 1551–1610 (1982 & Supp. V 1987).

DISCUSSION

1. *Earlier Court Decisions on Niger Seed*

The tariff classification of niger seed has been considered twice by the predecessor courts to the United States Court of Appeals for the Federal Circuit. In the first case, *Woodhull* v. *United States,* 15 Ct. Cust. App. 288, T.D. 42471 (1927), the Court of Customs Appeals considered whether niger seeds had been correctly classified under paragraph 762 of the Tariff Act of 1922 as "other garden and field seeds, not specially provided for." The importer contended the tariff provision for "other garden and field seeds" was meant to cover those seeds of the class generally intended only for planting in gardens and fields. Because niger seeds are used in the United States for bird feed rather than planting in gardens and fields, the importer claimed the niger seed should be classified either as a vegetable substance or as a non-enumerated unmanufactured article.

The *Woodhull* court referred to a broad and definite proviso that "the provisions for seeds in this schedule shall include such seeds whether used for planting or other purposes," and concluded that seed was not required to be used for planting in order to be classified as garden and field seed. The court also observed that the fact that niger seed

is or is not an oil-bearing plant will have little, if any, bearing in the premises, since it would seem that the history of the legislation, together with the context of the seed paragraphs of the tariff act of 1922, when compared with similar paragraphs of the act of 1913, is convincing that paragraph 762 was intended by Congress to cover this kind of merchandise.

*Id.* at 289–90. The court also noted that canary seed, used only for bird food, was also classifiable under the provision for field and garden seeds even though canary seed was not imported for planting in a field or garden. Because niger seed "serves, in this country, the exact purpose as that served by canary seed, * * * it would seem that it should receive the same treatment for tariff purposes." *Id.* at 291. The *Woodhull* court thus overruled the importer's protest against classification of niger seed as "other garden and field seeds, not specially provided for." *Id.*

In a second case considering niger seeds, an importer had claimed the proper classification was under "oil-bearing seeds and nuts: * * *, not specially provided for, when the oils derived therefrom are free from duty." The trial court rejected this claim because niger seed oil was not duty free. The Court of Customs and Patent Appeals affirmed this finding, rejected alternative classifications as "sunflower seeds" and "canary seeds," and followed *Woodhull* to hold again that niger seed was properly classifiable as "garden and field seeds not specially provided for":

> The question of whether niger seeds were included in the provision of paragraph 762 for "all other garden and field seeds" was exhaustively considered in the *Woodhull* case, and it was held that they were so included. We see no reason for changing the conclusion there reached, and it is unnecessary to discuss again that question.

*Prunty Seed & Grain Co.* v. *United States,* 18 CCPA 268, 270, T.D. 44429 (1930).

Although the issue before the Court would seem to have been squarely decided by *Woodhull* and *Prunty,* those cases were decided under a different statute than is involved here. Congress has changed the scope of the competing provisions involved, so that these earlier cases are no longer controlling. *See Rico Import Co.* v. *United States,* 60 CCPA 15, 20, C.A.D. 1075, 469 F.2d 699, 702 (1972); *United States* v. *American Brown Boveri Elec. Corp.,* 17 CCPA 329, 333, T.D. 43776 (1929).

The issue before the Court is whether niger seed is classifiable as "Oil-bearing nuts and seeds, not specially provided for" or "Garden and field seeds, not specially provided for." Unlike *Woodhull* and *Prunty,* the Court is faced with two competing "not specially provided for" tariff items.

## 2. *The Competing Tariff Provisions*

As the United States Court of Appeals for the Federal Circuit recently stated, in cases involving statutory construction:

> The starting point in every case involving construction of a statute is the language itself. Where the plain language of the statute would settle the question before the court, the legislative history is examined with hesitation to determine whether there is a clearly expressed legislative intention contrary to the statutory language. Sometimes the literal language of some part of a statute may seemingly contradict the intent of the statute taken as a whole. Absent a clear cut contrary legislative intent, the statutory language is ordinarily regarded as conclusive.

*Madison Galleries, Ltd.* v. *United States*, No. 88–1559, slip op. at 4–5 (Mar. 8, 1989) (citations omitted). Additionally, an imported article which is described in two or more provisions of the TSUS is classifiable in the provision which most specifically describes it. General Interpretive Rule 10(c), TSUS; *see e.g., Aceto Chem. Co.* v. *United States,* 59 CCPA 212, 220–21, C.A.D. 1069, 465 F.2d 908, 914 (1972).

A headnote to the subpart for the government's classification as "garden and field seeds, not specially provided for" provides that the "subpart covers garden and field seed *whether actually used for seeding or other purposes."* Schedule 1, part 6, subpart B, headnote 1, TSUS (emphasis added). It is, therefore, irrelevant that niger seeds are used in the United States as birdseed rather than for seeding. The same headnote to that subpart provides further that it does not cover seeds "unfit for seeding purposes within the meaning of the Federal Seed Act." Schedule 1, part 6, subpart B, headnote 1, TSUS. The importer admits, however, that the niger seed is not "unfit for seeding purposes within the meaning of the Federal Seed Act," 7 U.S.C. § 1551–1610 (1982 & Supp. V 1987). The imported niger seed thus satisfies each of the requirements of schedule 1, part 6, subpart B, headnote 1, TSUS.

A superior headnote in part 6 states, however, that part 6 (for live plants and seeds)

> does not cover all live plants and seed. Cereal grains, certain bulbs and other vegetables (such as potatoes, onions, garlic and beans), and certain seeds (such as spice seeds and *oil-bearing seeds) are provided for elsewhere* in this schedule * * *.

Schedule 1, part 6, headnote 1 (emphasis added).

Looking "elsewhere" in schedule 1, a headnote to subpart A of part 14 provides: "This subpart covers oil-bearing seeds and other oil-bearing vegetable minerals." Schedule 1, part 14, subpart A, headnote 1, TSUS. This headnote covers the importer's proposed classification under item 175.57, TSUS, as "Oil-bearing nuts and seeds, not specially provided for."

The government does not dispute that niger seed is an oil-bearing seed, even though oil is not extracted from the seeds in the United States. The government argues, however, that tariff provisions do not necessarily include everything which falls within their literal meaning, particularly where there is a clearly demonstrable, contrary legislative intent. *General Methods Corp.* v. *United States,* 59 CCPA 109, 112, C.A.D. 1049, 458 F.2d 521, 523 (1972); *United States* v. *Andrew Fisher Cycle Co.,* 57 CCPA 102, 107, C.A.D. 986, 426 F.2d 1308, 1311–12 (1970); *American Rusch Corp.* v. *United States,* 74 Cust. Ct. 153, 157, C.D. 4599, 394 F. Supp. 1402, 1405 (1975).

Legislative history can be a legitimate guide to a statutory purpose obscured by ambiguity, but without a clearly expressed legislative intent to the contrary, the plain language of the statute must ordinarily be regarded as conclusive. *United States* v. *Ron Pair Enterprises, Inc.,* 109 S. Ct. 1026, —— (1989); *Burlington N. R.R. Co.* v. *Oklahoma Tax Comm'n,* 481 U.S. 454, 461 (1987); *Madison Galleries, Ltd.* v. *United States,* No. 88–1559, slip op. at 5 (Mar. 8, 1989). Unless exceptional circumstances dictate otherwise, judicial inquiry is complete when the court finds the terms of a statute to be unambiguous. *Brookside Veneers, Ltd.* v. *United States,* 847 F.2d 786, 788 (Fed. Cir. 1988), *cert. denied,* 109 S.Ct. 369 (1988). The Court accordingly turns to the question of whether either of the competing provisions is ambiguous.

The government argues that examination of other seeds listed *eo nomine* under the heading "garden and field seeds" provides "strong, abundant and clear evidence" that Congress did not intend to exclude all spice seeds and oil-bearing seeds from part 6. The government specifically identifies "celery seeds" under item 126.21, TSUS. The government argues that because Congress provided *eo nomine* for "celery seeds" in the same subpart as "garden and field seeds, not specially provided for," notwithstanding the suggestion in schedule 1, part 6, headnote 1, TSUS, that spice and oil-bearing seeds are provided for in other parts, it is "obvious" that headnote 1 does not actually exclude all seeds capable of being used as a spice or bearing oil.

The government relies upon the following definitions of celery seed and celery-seed oil:

> celery seed *n:* minute seedlike fruits of a widely cultivated celery plant (*Apium graveolens*) that are dried for use as a condiment

> celery-seed oil *or* celery oil *n:* a colorless or yellowish essential oil with a celery odor and taste obtained from celery seeds and used chiefly as a flavoring agent

*Webster's Third New International Dictionary* 359 (1981). Celery seed is both a spice and an oil-bearing seed. K.T. Farrell, *Spices, Condiments, and Seasonings* 68–72 (1985). In addition to its use as a

condiment, celery seed is also used for bird seed. F. Rosengarten, Jr., *The Book of Spices* 177 (1969).

The government also relies upon the 1960 *Tariff Classification Study*. The court may refer to the *Tariff Classification Study* to resolve questions relating to the meaning and scope of terms in the tariff schedules. *Demuth Steel Prods. Co.* v. *United States,* 12 CIT 480, 688 F. Supp. 632, 635 (1988).

The *Tariff Classification Study* stated that "all the seeds in the existing provisions of paragraph 763 and 764 except canary seed and grain sorghum seed are in subpart B of this part." *Tariff Classification Study,* schedule 1, part 6, at 116 (1960). Niger seeds were then being classified as "garden and field seeds, not specially provided for" in paragraph 764. According to the government, the transfer of provisions under paragraph 764 to subpart B of schedule 1, part 6 suggests that Congress intended for niger seeds to continue to be classified as "garden and field seeds, not specially provided for."

The Court is unable to agree with the government that Congress evidenced any special intentions for the classification of niger seed. First, the Tariff Commission "received no oral·presentation or written statement with respect to Part 6 of Schedule 1 of the revised tariff schedule." *Tariff Classification Study,* Explanatory and Background Materials, Schedule 1, at 89 n.1 (1960). Second, the then-existing administrative practice to classify niger seed as "garden and field seeds, not specially provided for" was based on the *Woodhull* and *Prunty* decisions, which no longer control the classification of niger seed. Third, the inclusion of celery seeds under "garden and field seeds" does not contravene the rule that absent any clear evidence of legislative intent contrary to the statutory language, the statutory language is conclusive. *Madison Galleries, Ltd.* v. *United States,* No. 88–1559, slip op. at 5 (Mar. 8, 1989). With two competing "not specially provided for" tariff items, the Court finds that "Oil-bearing seeds, not specially provided for" most specifically describes the oil-bearing niger seeds.

### Conclusion

In the absence of clear Congressional intent to the contrary, the Court finds that from a plain reading of the tariff provisions oil-bearing niger seeds are properly classifiable as "Oil-bearing nuts and seeds, not specially provided for" under item 175.57, TSUS, and eligible for duty free entry.